**Francis Ray ROBINSON, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 8354.**

United States Court of Appeals
Tenth Circuit.

Sept. 20, 1966.

Elmore A. Page, Tulsa, Okl., for appellant.

Hugh V. Schaefer, Tulsa, Okl. (John M. Imel and Lawrence A. McSoud, Tulsa, Okl., on the brief), for appellee.

Before LEWIS, BREITENSTEIN and HILL, Circuit Judges.

HILL, Circuit Judge.

Appellant was indicted on seven Counts. Counts 1 through 4 charged separate violations of 21 U.S.C. § 331 (k), in that he caused a number of capsules of amobarbital sodium and secobarbital sodium to be dispensed without a prescription, each dispensing being an act which misbranded the drugs; Count 5 charged the sale of 100 morphine tablets, such sale not being in pursuance of a written order, in violation of 26 U.S.C. §§ 4705(a) and 7237(b); Count 6 charged the purchase of narcotic drugs which were not in or from the original stamped package in violation of 26 U.S.C. §§ 4704(a) and 7237(a); and Count 7 charged a sale of 139 codeine tablets made not pursuant to a written order in violation of 26 U.S.C. §§ 4705(a) and 7237 (b). Counts 1, 2, 3 and 4 charge misdemeanors and Counts 5, 6 and 7 charge felonies. A jury returned verdicts of guilty on all Counts and sentences were imposed as follows: Count 1—one year; Count 2—one year; Count 3—one year; Count 4—one year; Count 5—fifteen years; Count 6—suspended imposition of sentence and placed on probation for five years to commence to run upon expiration of all of the other sentences; and Count 7—fifteen years with sentences on all Counts except 6 to run concurrently. This direct appeal resulted.

The record reveals that the pertinent facts leading up to the point at which appellant was charged with the crimes are as follows:

Sometime prior to September 26, 1964, Sam J. Roberts, an Inspector for the Food and Drug Administration, learned from undisclosed sources that amphetamine (a non-narcotic drug) was being sold at the "Big D" truck stop in Dallas, Texas. Roberts, on September 28, 1964, visited the truck stop. He assumed the alias of "Lee Hook" and posed as a dope peddler. An employee there furnished him with appellant's name and Roberts left his alias and phone number with the employee. On October 2, 1964, the appellant called Roberts at the Waco, Texas number he had left at the "Big D" truck stop and asked Roberts[1] how many "pills" he wanted. During this phone conversation it was agreed that Roberts and appellant would meet in Dallas in the early morning hours of the following day. Roberts then arranged with federal officials to have a surveillance team in Dallas and left immediately for that city. At approximately 2:35 a. m. on October 3, 1964, appellant and Roberts rendezvoused at the "Big D" truck stop. At this meeting—which is the first contact the government had with him—appellant sold Roberts 125 amphetamine tablets for which Roberts paid appellant $5.00.[2] Appellant then returned to Tulsa, Oklahoma, his home.

During the period between October 3 and 17, a number of telephonic communications were had between Roberts and appellant. During one of these conversations, Roberts asked appellant if he could give a "buddy" appellant's phone number and appellant told Roberts it would be all right. Also, during these conversations—some initiated by Roberts and some by appellant—it was agreed that Roberts and appellant would meet again at the "Big D" truck stop. On October 17, 1964, this meeting took place at 8:30 p. m. Roberts was accompanied by another U. S. Food and Drug

1. Although Roberts was, of course, at all times known to appellant as Lee Hook, he shall be referred to herein by his real name.

2. At no time when appellant made any of the drug sales referred to in this case was he presented with a prescription for the same by a licensed physician. See 21 U.S.C. § 331(k) and 21 U.S.C. § 353(b) (1).

Administration Inspector, Floyd Beachum. Beachum was introduced to appellant as Willy Young, the "buddy" from Waco, Texas, referred to in the earlier phone conversation. At this meeting, Roberts purchased from appellant 5,000 benzedrine sulfate (a non-narcotic drug) tablets and paid him $195.00 therefor. Beachum also purchased some non-narcotic drugs during this Texas rendezvous. During this meeting Beachum asked appellant if he could obtain any "hard stuff". Appellant replied—so testified both Inspectors Roberts and Beachum—that he recently had obtained 25 morphine tablets for an individual.

During the next few weeks after October 17, appellant and Roberts talked to each other twice over the telephone. During one of these conversations appellant expressed an interest in selling tuinal[3] to Roberts. Roberts testified that when he asked appellant if appellant could supply him with morphine tablets, appellant replied that he had access to them and that they would cost fifty cents per tablet.

On November 11, 1964, it was agreed between appellant and Roberts that Roberts would drive to Tulsa, Oklahoma, to buy some drugs. On the following day, Roberts and Beachum drove to Tulsa and, after making a few phone calls, located appellant. Because of the Texas license plates on their car, appellant asked the agents to ride with him in his vehicle to his trailer home on the outskirts of Tulsa. Since the agents had not located appellant until late the night of the twelfth, it was 12:30 a. m. on the thirteenth before they reached appellant's home. There the agents purchased a great number of non-narcotic drugs, including 500 tuinal capsules, 500 seconal capsules, a small number of amphetamine capsules and other miscellaneous drugs. On this evening, appellant had in his home a cannister which contained straight amphetamine powder. Using some empty capsules he "capped out" a few amphetamine capsules for the agents, in order that they might see how easy it would be for them to buy the powder and make their own pills. On this morning, the agents again inquired about morphine and appellant replied he had none but expected to get some within the next few days, and that the price would be fifty cents per tablet. At about 5:00 a. m. the morning of November 13, the agents left appellant's trailer. The purchases they made on that occasion in Tulsa are the purchases charged in Counts 1 through 3 of the indictment.

On November 23, 1964, Roberts called appellant about the morphine tablets and appellant said he had some. Roberts then contacted the Bureau of Narcotics in Oklahoma City and arranged for Narcotic Agent James Rose to accompany him to Tulsa the next day. On November 24, 1964, Rose and Roberts went to Tulsa. James Rose was introduced to appellant as a big-time dope peddler.[4] On this occasion, appellant sold to Roberts and Rose 100 morphine[5] tablets and some non-narcotic drugs. The sales made on this day are the acts alleged in Counts 4 and 5 of the indictment.

Roberts and Rose met appellant a few times after the 24th of November. Appellant, on these occasions, attempted to obtain some more morphine for the agents but was unsuccessful. However, he informed Rose and Roberts that he knew where he could obtain a great many drugs. He told them about a burglar who had been shot burglarizing a store and that this individual—who was under guard in a Tulsa hospital—had a large cache of drugs. He said he could sell the agents the drugs if he could find out where they were hidden. After some intervening meetings, Rose made a call to appellant and appellant told him he had located the cache of drugs. Rose then proceeded alone to

---

3. Tuinal is a non-narcotic drug. "Narcotic drugs" are those drugs so defined in 26 U.S.C. § 4731.

4. James Rose, of course, used an alias. Appellant knew him as Jim Adams.

5. Morphine is a "narcotic drug" as defined by 26 U.S.C. § 4731.

Tulsa. On December 5, 1966, Rose purchased from appellant a great quantity[6] of narcotic drugs, including 139 codeine tablets. The possession by appellant of these 139 codeine tablets, in a package other than their original stamped package, and his sale of them to Rose are the wrongful acts alleged in Counts 6 and 7 of the indictment.

■ Appellant first urges that the trial court erred in not giving his requested instruction on entrapment. The instruction given by the trial court in this case conformed to what this court has said concerning the defense of entrapment.[7] Summarizing, the jurors were told that where an accused has the readiness and willingness to commit the offense, the fact that the officers offer an opportunity to the accused to commit the offense, such as assuming fictitious identities and offering to buy narcotics from him, does not constitute entrapment. But if the accused had no previous purpose or intent to commit the offense charged and did so only because he was induced or persuaded by a government agent, then entrapment has occurred and is a good defense. Counsel for appellant cites the case of Ryles v. United States, 10 Cir., 172 F.2d 72, to support his requested instruction. He says in his brief that in that case this court approved of the following instruction on entrapment: "If you believe from the evidence that the government agents, first suggested the commission of the crime, or did first lure the accused into the commission of such acts, then it will be your duty to hold for the defendant." This is an error on the part of counsel because no instruction on entrapment had been given in the Ryles case and the court did not approve any such instruction. The instruction on entrapment given in this case meets all of the requirements of the decided cases of this court on the subject.

■■ Appellant points error to the reception of evidence showing the commission of crimes not charged in the indictment. This evidence pertained to the meetings at the "Big D" truck stop of Roberts and appellant on October 3 and Roberts and Beachum and appellant on October 17. The agents testified that they purchased habit-forming drugs from Robinson on both occasions. According to the record this evidence was admitted to show a common scheme, plan or design and, in addition insofar as Counts 5, 6 and 7, to show the accused's state of mind and intent. During the trial and by a jury instruction, the court so advised the jury. Of course, the general rule is that evidence of another and independent crime is not admissible against an accused; but a recognized exception to that rule is that evidence of other crimes committed by an accused is admissible if such evidence tends to establish a common scheme, system, plan or design on the part of the accused, where it is so related to the crime charged, that it may serve to establish the crime charged or to establish an intent or a motive in the mind of the accused to commit the crime charged.[8] Certainly, all of the crimes charged and the other crimes shown by the questioned evidence were crimes of a similar nature, that is, crimes involving traffic in illegal drugs. This evidence did tend to establish a common scheme, plan and design on the part of the accused and was related to the crimes charged. It did give the jury additional evidence from which it could find intent as to Counts 5, 6 and 7 and ascertain the state of mind of the accused. The fact that the other crimes established did not require the element of intent does not change their admissibility.

■ Appellant attacks the indictment in several particulars. First, he says there was a misjoinder of offenses charged because the first four Counts

---

6. The drugs purchased on this occasion made up some 25 exhibits at the trial.

7. See Lucas v. United States, 10 Cir., 355 F.2d 245; Jordan v. United States, 10

Cir., 348 F.2d 433; Maestas v. United States, 10 Cir., 341 F.2d 493.

8. Morgan v. United States, 10 Cir., 355 F.2d 43.

charge misdemeanors and the last three charge felonies, the first group not requiring proof of the element of intent and the last group containing that element of proof. He claims prejudice because of such joinder. The record does not show any objection to the indictment prior to trial exactly on this ground. There was a motion filed to dismiss three of the first four Counts. But the motion was made because appellant felt the government was moulding three crimes out of a single act. The motion was denied. At the close of the government's evidence appellant moved to declare a mistrial on this ground of misjoinder and the resulting prejudice to the accused. We do not believe there was a misjoinder of offenses in the indictment. Such a joinder is plainly authorized by Rule 8, F.R. Crim.P.[9] The offenses were of a similar character, all pertaining to the unlawful traffic in habit forming and contraband drugs, they were all based on a series of connected transactions and when considered together tend to establish a common scheme or plan. Admittedly, the method followed by the government in joining the seven offenses in one indictment was damaging to the accused because of the wide scope of evidentiary inquiry permitted but we are unable to conclude that it was prejudicial to him in the sense that it amounted to a prejudicial misjoinder under Rule 14, F.R.Crim.P. Had the accused been charged by seven separate indictments and given seven separate trials, most of the evidence adduced in the trial in question would have been admissible in each of the separate trials.

▮ Appellant contends the trial court erred in denying his motion to dismiss Counts 2 and 3, in which motion it was contended that Counts 1, 2 and 3, because the acts charged occurred on the same evening and at the same place, constituted but one offense. Little need be said about this contention. In Beacham v. United States, 10 Cir., 218 F.2d 528, 529, Judge Murrah said, "The traditional test of the identity of offenses is 'whether the same evidence is required to sustain them' * * *." Applying this test to the offenses charged in Counts 1, 2 and 3, we must conclude they were separate offenses. Appellant relies on Robinson v. United States, 10 Cir., 143 F.2d 276. The court there used the same test, but from the facts of that case, came to a different conclusion than we reach on the facts of the case at bar. The facts here show that each of the sales charged in the three Counts were separate transactions despite the fact that they occurred at the same place and were very close in point of time. It should also be noted that since the sentences imposed on Counts 1, 2 and 3 are to run concurrently, there can be no prejudice to appellant in any event.

Error is also urged because of the admission of evidence which we have not separately covered. We have considered the record in connection with this evidence and find the urged errors to be without merit. Complaint is also made concerning the final argument of government counsel and of statements made by that counsel during the trial. These alleged objectionable statements are not specifically pointed out to us and the record of the closing argument was not brought up by appellant.

We have very carefully read and considered the entire record before us in the case and find that there is no substantial trial error and that appellant was afforded a fair trial in all respects.

Affirmed.

---

9. "Rule 8, Joinder of Offenses and of Defendants.

(a) Joinder of Offenses. Two or more offenses may be charged in the same indictment or information in a separate count for each offense if the offenses charged, whether felonies or misdemeanors or both, are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan."