Andrew J. **HARRIS,** Appellant,

v.

**UNITED STATES of America,** Appellee.

No. 24303.

United States Court of Appeals Fifth Circuit.

Aug. 1, 1968.

Rehearing Denied Aug. 23, 1968.

whiskey was to be procured by another from yet another party and to be delivered by that fourth party to McCullough. November 21, 1965, McCullough and a Special Investigator of the Alcohol and Tobacco Tax Division of the Treasury paid Harris $163 for twenty-five gallons of moonshine whiskey, to be delivered by someone else. December 2, 1965, the Special Agent paid Harris for thirty-one gallons of moonshine whiskey delivered to McCullough by Harris.

Harris alleges four grounds for error below: (1) that the district court failed to declare a mistrial for prejudicial appeal to the jury by the Government's counsel and witness; (2) that the district court failed to hold as a matter of law that the defense of entrapment was available to Harris under the facts of the case; (3) that the district court admitted as evidence against Harris a tape recording of a telephone conversation made without his knowledge or consent; and (4) that the district court failed to direct a verdict of acquittal for Harris and failed to enter a verdict of acquittal notwithstanding the verdict of the jury. There is no merit to these contentions. We affirm.

\* \* \*

Allen W. Lindsay, Milton, Fla., for appellant.

Clinton Ashmore, U. S. Atty., Stewart J. Carrouth, Asst. U. S. Atty., Tallahassee, Fla., Horace P. Rowley, III, Asst. U. S. Atty., New Orleans, La., for appellee.

Before JOHN R. BROWN, Chief Judge, WISDOM, Circuit Judge, and BREWSTER, District Judge.

WISDOM, Circuit Judge:

Andrew J. Harris, defendant-appellant, was charged and convicted in the district court on three counts of unlawful sale and unlawful possession of nontaxpaid whiskey.

November 3, 1965, Walter McCullough, a Government informer, paid Harris $130 for twenty gallons of moonshine whiskey. According to their agreement, the

(1) On cross examination of McCullough, the following exchange took place:

Q. \* \* \* When you first came you didn't see Mr. Henderson?

A. No sir. I had met him on a Saturday and I talked to him about some whiskey and somehow or other Mr. Harris he heard about it and he said he was mad with me for talking to those fellows about getting the whiskey from them, because they were working for him and said he was "too big for his britches anyhow and he was going to set him down."

Q. This was two white men?

A. Yes sir. He said that him and another white man was at the head of this thing and the white man was the head of it and he was next to the white man.

On redirect, the United States Attorney returned to this subject:

Q. Didn't he [Harris] tell you that you could not trust a white person?

A. Yes sir.

Q. Called them "tallow faces?"

A. Yes sir.

Q. Told you never to deal with a white person?

A. Yes sir.

■ Harris argues that the Government insidiously injected the racial issue into this case to prejudice the jury against him as a Negro. We note that McCullough, the informer, was also a Negro. Defendant's own attorney first raised the racial issue and then failed to object to the prosecution's questions.[1] Defense counsel again brought up the matter in examining Harris himself.[2] We hold that the district court did not err in failing to direct a mistrial.

■ (2) The district court charged the jury on entrapment, despite Harris's denial under examination that he had even committed any of the acts charged in the indictment. Under the law of this circuit, Harris was not entitled to this charge.

Once on the stand [the defendant] had a choice: deny the acts constituting the offense or admit that he committed the acts but contend he was entrapped. Having elected to deny that he committed the acts charged he was not entitled to an instruction on entrapment. McCarty v. United States, 5 Cir. 1967, 379 F.2d 285, 287.[3]

But, argues Harris, the arrangement between the Government and McCullough is such a contingent fee arrangement as was contemplated and condemned in Williamson v. United States, 5 Cir. 1962, 311 F.2d 441.

In Williamson, this court held that when an informer is paid on a contingent basis, there must be some explanation for using such a system. The court went on to say that prior knowledge that the accused is committing the unlawful act might be a sufficient explanation. Hill v. United States, 5 Cir. 1964, 328 F.2d 988, 989.

Such prior knowledge was present in *Hill*; it was present here, evidence of which was supplied in part by Harris himself.[4] We find no error in the district court's failing to hold as a matter of law that Harris was entrapped. See also Bullock v. United States, 5 Cir. 1967,

---

1. Harris contends that no objection was made to the Government's questions or the witness's answers because "any objection by defendant or his attorney to the interjection of said racial issues could very well have further prejudiced defendant's civil rights in the premises. * * *" However that may be, at no time in the court below did Harris move to have any testimony or questions stricken or for a mistrial even when such motions could have been made to the court out of the hearing of the jury.

2. Q. There was a remark that was made, did you make a derogatory remark about white people?

A. I don't see how I could, sir, when they have always took care of me all my life. I made a living off them all my life.

Q. Did you ever call them 'chalk faces?' You heard the testimony.

A. No, sir, I have not.

3. This case is not controlled by Sears v. United States, 5 Cir. 1965, 343 F.2d 139, or Henderson v. United States, 5 Cir. 1956, 237 F.2d 169, 61 A.L.R.2d 666, where the defendants were allowed to rely on entrapment with respect to certain overt acts but still to deny their guilt as to a *conspiracy*. Here proof that Harris did not commit the acts constituting the offenses charged "necessarily disproves that he was entrapped into doing the offense." McCarty v. United States, 5 Cir. 1967, 379 F.2d 285.

4. As to his past conduct and predisposition to commit the offenses charged, Harris testified:

Q. Have you been known as a bootlegger locally in that area?

A. I have been known, sir, to know about whiskey, yes, sir.

Q. Do you think that might have been the reason they contacted you?

A. I believe, sir, that might be the reason. Yes, sir.

383 F.2d 545; Sears v. United States, 5 Cir. 1965, 343 F.2d 139.

 (3) The informer testified that on two occasions he called Harris on the telephone from the Alcohol and Tobacco Tax Office in Pensacola, Florida, that they discussed the sale of whiskey, and that the informer agreed to purchase whiskey from Harris. Harris admitted that he received the phone calls but testified that the purchase of whiskey was not discussed on either occasion. At the close of the defendant's case, the Government offered, in rebuttal, tape recordings of the phone conversations made by a Special Agent of the Office. The informer testified that he gave the Agent permission to record the calls. As to the method of recording, the attorney for the Government merely stated that "they had the recording machine next to the telephone and they just picked this up."

This case is clearly within this Court's holding in Carnes v. United States, 5 Cir. 1961, 295 F.2d 598, cert denied, 369 U.S. 861, 82 S.Ct. 949, 8 L.Ed.2d 19: recorded conversations made with the consent of one party are admissible under 47 U.S.C. § 605.[5] Accord: United States v. McGuire, 2 Cir. 1967, 381 F.2d 306; Scott v. United States, 5 Cir. 1966, 355 F.2d 799; Hall v. United States, 5 Cir. 1962, 308 F.2d 266; Ferguson v. United States, 10 Cir. 1962, 307 F.2d 787. And we have recently held that the Supreme Court's decision in Katz v. United States, 1967, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576, does not affect this result. Dryden v. United States, 5 Cir. 1968, 391 F.2d 214. Cf. Dancy v. United States, 5 Cir. 1968, 390 F.2d 370; Handsforth v. United States, 5 Cir. 1968, 390 F.2d 373; Long v. United States, 5 Cir. 1967, 387 F.2d 377. The district court committed no error here.

 (4) Finally, considering the testimony in the record of two Special Agents of the Government and McCullough, we see no error in the district court's refusal to direct a verdict of acquittal either at the close of the Government's case, at the close of the defendant's case, or after the verdict was rendered.

The judgment is affirmed.

JOHN R. BROWN, Chief Judge (concurring):

I concur fully in the court's action and all of the opinion but in view of my recent recantation in Moore v. United States, 5 Cir. 1968, 394 F.2d 818, of my acquiescence in Williamson v. United States (Williamson II), 5 Cir. 1965, 340 F.2d 612, I renew and republicize my Williamson I, 5 Cir. 1962, 311 F.2d 441, 445, opposition to these contingent fee arrangements.

---

5. Section 605 of title 47 U.S.C. provides that "no person not being authorized by the sender shall intercept any communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person * * *." Cf. Lee v. State of Florida, 1968, 392 U.S. 378, 88 S.Ct. 2096, 20 L.Ed.2d 1166.