**Mortimer Norman KORAN, Appellant,**

v.

**UNITED STATES of America,
Appellee.**

**No. 25446.**

United States Court of Appeals
Fifth Circuit.

Jan. 27, 1969.

Rehearing and Rehearing En Banc
Denied March 28, 1969.

**1322**

H. Robert Koltnow, Gerald Kogan, Miami, Fla., for appellant.

Michael J. Osman, Asst. U. S. Atty., Theodore Klein, Miami, Fla., William A. Meadows, Jr., U. S. Atty., Miami, Fla., for appellee.

Before GEWIN and BELL, Circuit Judges, and BOOTLE, District Judge.

GEWIN, Circuit Judge:

Mortimer Norman Koran was convicted in the United States District Court for the Southern District of Florida on Counts Three and Five of an indictment charging substantive offenses relating to counterfeit currency.[1] Count Three charged Koran with printing a one dollar silver certificate and Count Five charged him with possession of the certificate. He was sentenced to five years imprisonment on each count, the sentences to run concurrently. We affirm the judgment of conviction.

Appellant Koran urges that his fourth amendment rights were violated by the introduction at his trial of evidence obtained through the use of electronic listening and recording devices. The evidence challenged consisted of (1) the testimony of an investigator, (2) the tape recordings of certain telephone conversations, and (3) the tape recordings of certain non-telephonic conversations. The investigator, Secret Service Agent Rivers, testified that he overheard a conversation between the appellant and a government informer, Schatzabel, in which the appellant discussed plans for printing a large quantity of counterfeit currency. The conversation took place in the appellant's printing establishment while Agent Rivers, stationed a short distance away, listened to the conversation over a radio which received transmissions from a device concealed in Schatzabel's shirt pocket. The tapes of telephone conversations which were received in evidence were recordings of communications between the appellant and Schatzabel and between the appel-

---

1. The pertinent parts of the statute, 18 U.S.C. § 474 (1964), provide respectively:

Whoever has in his possession or custody, except under authority from the Secretary of the Treasury or other proper officer, any obligation or other security made or executed, in whole or in part, after the similitude of any obligation or other security issued under the authority of the United States, with intent to sell or otherwise use the same; or

Whoever prints, photographs, or in any other manner makes or executes any engraving, photograph, print, or impression in the likeness of any such obligation or other security, or any part thereof, or sells any such engraving, photograph, print, or impression, except to the United States . . .

Shall be fined not more than $5,000 or imprisoned not more than fifteen years, or both.

The jury returned a verdict of "not guilty" on three additional counts.

lant and Agent Rivers, who acted incognito as a prospective buyer of counterfeit merchandise. These conversations were recorded by a device attached to the telephone used by Schatzabel and Rivers, both of whom consented to the recording of the conversations. The non-telephonic tapes were recordings of two conversations between Agent Rivers and appellant Koran which took place beneath a bridge. On both occasions, Rivers was equipped with a transmitter when he met with the appellant. The conversations were recorded by another agent who was posted nearby.

Prior decisions of this court, as well as decisions of the Supreme Court, have approved the use of evidence obtained by the methods employed in this case.[2] The appellant contends, however, that the Supreme Court in *Katz v. United States*[3] charted a new course which demands disapproval of such investigative techniques. He points particularly to the Court's pronouncement in *Katz* that "[w]hat a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection. . . . But what he seeks to preserve as private, even in an area accessible to the public, may be constitutionally protected."[4] The appellant asserts that, since he was unaware of the presence of electronic listening and recording devices, he did not *knowingly* expose to the public his private conversation.

This court has previously concluded that *Katz* leaves undisturbed the established law applicable to the methods of investigation employed in this case.[5] And in a recent opinion, the Tenth Circuit reached the same conclusion,[6] emphasizing the language of Mr. Justice White's concurrence in *Katz:*

> When one man speaks to another he takes all the risks ordinarily inherent in so doing, including the risk that the man to whom he speaks will make public what he has heard. . . . It is but a logical and reasonable extension of this principle that a man take the risk that his hearer, free to memorize what he hears for later verbatim repetitions, is instead recording it or transmitting it to another.[7]

Government agents in *Katz* had attached electronic listening equipment to the top of a telephone booth. When the defendant used the booth in making calls, the agents overheard his end of the conversations. The Supreme Court held that, since the search did not comply with constitutional standards, the evidence of the conversations was not admissible.

The attempt to equate the case *sub judice* with *Katz* must fail. It is true that appellant Koran did not wish to expose his words to the public. However, this fact alone does not suffice, for no criminal desires public exposure of his surreptitious activity. The crucial fact here is that the appellant knowingly took the risk that his conversants might expose his statements. Therefore, he cannot now complain that his conversants did in fact expose the conversations. In

---

2. Lopez v. United States, 373 U.S. 427, 83 S.Ct. 1381, 10 L.Ed.2d 462 (1963); On Lee v. United States, 343 U.S. 747, 72 S.Ct. 967, 96 L.Ed. 1270 (1952); Harris v. United States, 400 F.2d 264 (5th Cir. 1968); Handsford v. United States, 390 F.2d 373 (5th Cir. 1968); Dryden v. United States, 391 F.2d 214 (5th Cir. 1968); Dancy v. United States, 390 F.2d 370 (5th Cir. 1968); Beatty v. United States, 377 F.2d 181 (5th Cir.), *rev'd on other grounds*, 389 U.S. 45, 88 S.Ct. 234, 19 L.Ed.2d 48 (1967); Hurst v. United States, 370 F.2d 161 (5th Cir. 1967).

3. 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967).

4. 389 U.S. at 351, 88 S.Ct. at 511, 19 L.Ed.2d at 582.

5. Dryden v. United States, 391 F.2d 214, 215 (5th Cir. 1968); Dancy v. United States, 390 F.2d 370, 371 (5th Cir. 1968); Long v. United States, 387 F.2d 377, 378 n. 1 (5th Cir. 1967). *See* Harris v. United States, 400 F.2d 264 (5th Cir. 1968); Handsford v. United States, 390 F.2d 373 (5th Cir. 1968).

6. Holt v. United States, 404 F.2d 914 (10th Cir. 1968).

7. 389 U.S. at 363 n. 1, 88 S.Ct. at 517, 19 L.Ed.2d at 589 n. 1.

*Katz,* on the other hand, exposure of the defendant's private conversation was unaided by his conversant. Instead, exposure resulted from circumstances unrelated to the risk which the defendant knowingly took when he spoke to his conversant. Thus we think it clear that the appellant's reliance upon *Katz* is misplaced.[8]

The appellant argues that Agent Rivers' testimony relating to the conversation he overheard between the appellant and Schatzabel as they talked in the appellant's shop was nevertheless improper because it was unsupported by testimony from Schatzabel, who did not testify. This contention is without merit. The absence of supporting testimony from Schatzabel would have significance only if there existed a complete lack of evidence identifying the appellant as the party with whom Schatzabel conversed. Although Agent Rivers from his listening post could not visually observe the participants in the conversation, the record establishes beyond dispute that the appellant was one of the parties.

The statute which the appellant was convicted of violating proscribes the printing of currency and the possession of counterfeit currency "except under authority from the Secretary of the Treasury or other proper officer."[9] The appellant contends that the Government did not prove his lack of authority and, therefore, failed to prove all the elements of the offense charged. While the Government offered no direct proof of the appellant's lack of authority, it did present evidence from which the jury could reasonably infer that he had no authority.[10] Agent Rivers, for example, testified:

He [the appellant] indicated to me he had something to [show] me and I said well, let me look at it. He said, well, I'm not going to show it to you out here in the open.

I says well, let me look at it. So he handed it to me and I opened it up and it was a $1.00 Silver Certificate oversized.

Q Did you have any conversations with him regarding that $1.00 Silver Certificate that he handed you on that occasion?

A Yes. He indicated I should get in the car with him to look at this thing in private, which I did.

He stated that he had this at home and he had made it the night before and said he made it oversized just to show its detail which would prove his being a good printer.

If the jury believed the broad thrust of the testimony of the witnesses—which it obviously did—the inference was compelled that the appellant had no authority to print currency or to possess counterfeit currency.

Appellant Koran next contends that the trial court erred in permitting references during the prosecutor's opening statement and in the evidence throughout the trial to the appellant's unlawful printing of title certificates and driver's licenses as a part of the same venture which produced the counterfeit currency. Generally, evidence of crimes not charged in the indictment is

---

8. We are, of course, aware that our analysis of *Katz* is in conflict with a Seventh Circuit decision. In United States v. White (7th Cir. 1968), *upheld on rehearing en banc,* 405 F.2d 838 (7th Cir. 1969), the court held that mere existence of the need to use informers and secret devices to obtain information from a defendant is a clear indication that the defendant seeks to exclude the uninvited ear and, consequently, that this method of investigation violates the defendant's fourth amendment rights. As indicated by our discussion, we do not believe the reach of *Katz* extends so far as the Seventh Circuit suggests.

9. See note 1 *supra.*

10. Since we conclude that the Government presented sufficient evidence to support a finding that the appellant lacked authority, we do not reach the question raised in the briefs of whether proving lack of authority is a burden carried by the Government or a defense which the defendant must raise.

inadmissible. However, we believe that the evidence in question falls within a widely recognized exception to the general rule which permits such evidence if it tends to prove a common scheme, plan or design on the part of the defendant so closely related to the offense charged that it may serve to establish the offense or to establish an intent in the mind of the accused to commit the offense.[11]

■ The prosecutor, in his opening statement, also made reference to the appellant's *arrest* for counterfeiting title certificates and driver's licenses. In response the appellant moved for a mistrial. The court denied his motion but offered to instruct the jury to disregard the prosecutor's comment; defense counsel, however, preferred not to have the instruction. The appellant contends that a mistrial was mandatory. We think, however, that the court was clearly within the bounds of its discretion in denying the motion.

■ The appellant makes one contention which is relevant only to his conviction on Count Five of the indictment, the possession count. The statute under which he was convicted makes unlawful the possession of a counterfeit obligation which is after the similitude of an obligation of the United States. The appellant argues that the oversized silver certificate which he is convicted of possessing was not "after the similitude" of a United States silver certificate.[12] However, it is unnecessary for us to reach this contention since the sentences under both counts run concurrently and since we have concluded that the conviction under the printing count is free of error.[13]

The judgment is affirmed.

## ON PETITION FOR REHEARING AND PETITION FOR REHEARING EN BANC

**PER CURIAM:**

The Petition for Rehearing is denied and no member of this panel nor Judge in regular active service on the Court having requested that the Court be polled on rehearing en banc, (Rule 35 Federal Rules of Appellate Procedure; Local Fifth Circuit Rule 12) the Petition for Rehearing En Banc is denied.

11. Pardo v. United States, 369 F.2d 922, 924 (5th Cir. 1966) ; Robinson v. United States, 366 F.2d 575, 578 (10th Cir. 1966).

12. See note 1 *supra.* The statute makes unlawful the *printing* of anything "in the likeness" of an obligation of the United States, without reference to "similitude." The appellant has not raised the likeness question but, even if he had, it would have been to no avail.

The legislative purpose is clear that Congress intended, in protecting the currency, to tolerate no manipulation in the making of impressions of government obligations or securities, whether the copies or impressions might be good or bad, and regardless of the purpose for which they might be made. . . . [T]here is no need of proof that such impressions were calculated to deceive. Webb v. United States, 216 F.2d 151, 152 (6th Cir. 1954).

13. Hirabayashi v. United States, 320 U.S. 81, 85, 63 S.Ct. 1375, 87 L.Ed. 1774 (1943); Mishan v. United States, 345 F.2d 790, 791 (5th Cir. 1965). Whether the "concurrent sentence" doctrine enunciated in *Hirabayashi* has continuing validity in light of subsequent decisions will be argued before the Supreme Court on March 24, 1969. See Benton v. Maryland, 393 U.S. 994, 89 S.Ct. 481, 21 L.Ed.2d 460 (1968).