**WHOLESALE VENDORS OF TEXAS, INC., a corporation, et al.**

v.

**UNITED STATES of America, et al.**

**Civ. A. No. CA 3–6719–E.**

United States District Court,
N. D. Texas,
Dallas Division.

April 17, 1973.

Edward B. Cloutman, III, Johnston, Polk, Larson, Cloutman & Dixon, A. Konradi, Dallas, Tex., for plaintiffs.

Frank D. McCown, U. S. Atty., by Harry Koch, Asst. U. S. Atty., Dallas, Tex., for defendants.

## MEMORANDUM OPINION

MAHON, District Judge.

Wholesale Vendors of Texas, Inc., is a corporation whose offices are located in Dallas, Texas; the corporation manufactures and distributes novelty items which are, for the most part, sold through vending machines. Among the items produced and sold by Wholesale Vendors are reproductions of various denominations of United States currency. Through an offset printing process, plaintiffs manufactured several thousand copies of $1-dollar, $5-dollar, $10-dollar, $20-dollar, $50-dollar and $100-dollar "bills." The currency reproductions were manufactured for sale as novelty items and are significantly larger than the actual negotiable instruments from which they

were copied.[1] The prints are made from photographic negatives of actual Federal Reserve Notes and silver certificates, and are essentially photographic blow-ups of such instruments; they are printed with ink and are virtually the same color as the obligations of which they are copies.

On July 19, 1972, a Secret Service Agent visited the offices of Wholesale Vendors of Texas, Inc. The agent informed plaintiff Gibbons that he was on the premises to investigate the corporation with regard to the printing and distribution of the novelty items here in question. The agent advised Gibbons that Gibbons should not keep in possession any such novelty currency reproductions. Upon departing, the agent seized a substantial quantity of the oversized "bills."

Thereafter Wholesale Vendors received conflicting information concerning the legality of printing and possessing the items in question. According to the testimony, indications were received in communications with Treasury Department field offices in certain cities in other States that there would be no opposition to the vending of the novelty currency in those regions. The plaintiffs continued to sell the reproductions through customers in those areas. Then, in early February of 1973, a second agent called on plaintiff and seized quantities of the novelty money as well as plates used to print them. Plaintiffs have filed suit in this court seeking a declaratory judgment determining their legal rights with regard to this matter; they have also requested injunctive relief to restrain defendants from seizing and retaining or threatening to seize and retain the paper novelty money sought to be sold by plaintiff corporation.

Defendants place significant reliance upon 18 U.S.C. § 474 which provides, in pertinent part, as follows:

"Whoever has in his possession or custody, except under authority from the Secretary of the Treasury or other

---

1. Plaintiff's Exhibit A, a reproduction of a $1-dollar silver certificate, is 12¹¹⁄₁₆″ x 5⁹⁄₁₆″.

proper officer, any obligation or other security made or executed, in whole or in part, after the similitude of any obligation or other security issued under the authority of the United States, with intent to sell or otherwise use the same; or

Whoever prints, photographs, or in any other manner makes or executes any engraving, photograph, print, or impression in the likeness of any such obligation or other security, or any part thereof, or sells any such engraving, photograph, print, or impression except to the United States, or brings into the United States, any such engraving, photograph, print, or impression, except by direction of some proper officer of the United States;

\* \* \* \* \* \*

Shall be fined not more than \$5,000 or imprisoned not more than fifteen years, or both."

Plaintiffs contend that the standard enunciated in United States v. Smith, 318 F.2d 94 (4th Cir. 1963), has not been met, and that therefore there can be no justification for the seizure or retention of the items in question. In *Smith* the defendant was prosecuted under § 472 which reads:

"Whoever, with intent to defraud, . . . brings into the United States or keeps in possession or conceals any falsely made, forged, counterfeited, or altered obligation or other security of the United States, shall be fined not more than \$5,000 or imprisoned not more than fifteen years, or both." 18 U.S.C. § 472 (1970).

The court found that the slips of paper there in evidence, which were part of a confidence scheme involving the sale of a machine to make money, were "just too crude to mislead." 318 F.2d at 95. The facsimiles had faint symbols and numbers, all of which read backwards, and were considered by the court to be "spurious." The court reversed the conviction for possession of a counterfeited obligation saying,

"Nor in law do these articles amount to counterfeits, for they are not of such falsity in purport as to fool an 'honest, sensible and unsuspecting person of ordinary observation and care.' United States v. Lustig, 159 F.2d 798, 802 (3 Cir. 1947), rev'd on other grounds, 338 U.S. 74, 69 S.Ct. 1372, 93 L.Ed. 1819 (1949); United States v. Weber, 210 F. 973, 976 (W.D.Wash. 1913)." 318 F.2d at 95.

In United States v. Johnson, 434 F.2d 827 (9th Cir. 1970), also relied on by plaintiffs, the *Smith* case was followed. The court, however, said, "It is important to observe that both charges were drawn under 18 U.S.C. § 412. . . ." 434 F.2d at 828–829. In *Johnson* the court distinguished the case there at bar from those brought under Section 474 and its predecessor. There it was stated,

"Section 474 covers a multitude of counterfeiting activities including the printing or photographing or making any reproduction of all 'or any part' of a genuine obligation or security of the United States. . . . [I]t is apparent that section 474 is intended to cover a much broader range of counterfeiting enterprises than the predecessor statutes of sections 471 and 472." 434 F.2d at 829 and 830.

The representatives of the Government contend that support for their position is found in Webb v. United States, 216 F.2d 151 (6th Cir. 1954), and in Koran v. United States, 408 F.2d 1321 (5th Cir. 1969). The Court concurs. *Webb* and *Koran,* unlike the cases advanced by petitioners, are premised upon Section 474; and while the Court recognizes that all of the above authorities are somewhat inapposite by virtue of the fact they relate to criminal prosecutions, the rationale reflected by the Section 474 cases is to be accorded some weight in the case at bar. Specifically, attention is directed to the *Webb* case, wherein it was stated:

". . . Congress . . . provided, in the portion of the statute with

which we are here concerned, that the mere making on an impression in the likeness of an obligation or security issued by the United States is a violation of the statute without proof of unlawful intent. The legislative purpose is clear that Congress intended, in protecting the currency, to tolerate no manipulation in the making of impressions of government obligations or securities, whether the copies or impressions might be good or bad, and regardless of the purpose for which they might be made." 216 F.2d at 152.

In Koran v. United States, *supra,* the defendant was convicted for printing "oversized" $1.00 silver certificates. The court expressly declined reaching a determination whether an oversized silver certificate was "after the similitude of any obligation or other security issued under the authority of the United States . . .", the *possession* of which is proscribed in the first provision of 18 U.S.C. § 474. It did however, draw a distinction between the elements required for proof of unlawful possession and those necessary to prove the offense of printing contemplated by the statute. "The statute makes unlawful the *printing* of anything 'in the likeness' of an obligation of the United States, without reference to 'similitude.' " 408 F.2d at 1325 n. 12. Then, indicating that the "similitude" test relating to possession is a stricter requirement, the court stated that the oversized bill would meet the "likeness" test that relates to printing. 408 F.2d at 1325 n. 12.

This Court believes that 18 U.S.C. § 504 sets forth the only circumstances wherein reproduction of United States obligations and securities is to be permitted. In addition to setting forth certain restrictions regarding linear dimensions of permissible illustrations, Section 504 also dictates that illustrations of obligations or securities of the United States shall be in black and white. This particular section, and the remainder of Title XVIII that is devoted to the reproduction of governmental obligations and securities, reflect, as stated in *Webb,*

"that Congress intended, in protecting the currency, to tolerate no manipulation in the making of impressions of governmental obligations or securities . . ." 216 F.2d 152; Koran v. United States, 408 F.2d 1321, 1325 n. 12.

The Court is not called upon to determine whether the "novelty items" are "of such falsity in purport as to fool an 'honest, sensible and unsuspecting person of ordinary observation and care.' " United States v. Smith, supra, 318 F.2d at 95. The articles in question are enlargements of actual negotiable instruments from which they differ only in size and, presumably, in paper content; they are likenesses within the purview of Section 474 and are not within the exceptions delineated in Section 504. Having reached this conclusion, the Court is not willing to hold that the Treasury and Secret Service agents were without authority to seize and retain the articles and instruments in question. Accordingly, the relief herein sought is denied.