**Gale Edward WAGNER, Plaintiff,**

v.

**William E. SIMON et al., Defendants.**

**No. 73CV442-W-2.**

United States District Court,
W. D. Missouri, W. D.

Memorandum of Decision Nov. 15, 1974.

Memorandum and Order Granting in Part and Denying in Part Plaintiff's Motion to Amend Judgment July 1, 1975.

Arthur A. Benson, II, and Sheila G. Silverman, Kansas City, Mo., for plaintiff.

J. Whitfield Moody, First Asst. U. S. Atty., Kansas City, Mo., for defendants.

## MEMORANDUM OF DECISION

COLLINSON, District Judge.

This is a complaint for declaratory judgment in which plaintiff seeks to have this Court declare that a "work of art" which he created by using a photographic enlargement of a fifty dollar Federal Reserve note and which was seized by agents of the United States Secret Service under the provisions of 18 U.S.C. § 474 (1970) is (1) not within the scope of the Counterfeiting and Forgery Statute, 18 U.S.C. §§ 471–509 (1970), or (2) to declare that sections 474 and 492 of that statute are unconstitutional or unconstitutional as applied to plaintiff. This action was heard by the Court on June 3, 1974, and the Court herewith enters its memorandum of decision in accordance with Rule 52, Fed.R.Civ.P.

### I.

The facts of this case are largely undisputed. Plaintiff, a student at the Kansas City Art Institute, caused the front of a fifty dollar Federal Reserve note to be photographed. From the negative of the note a black and white enlargement, approximately 36 inches by 15 inches, was printed.[1] Plaintiff then, for the alleged purpose of expressing criticism of President Nixon's economic policies and his involvement in the "Watergate" scandal, made certain modifications to the enlargement. These modifications, accomplished by means of overlays, included: (1) replacing the oval portrait of President Grant with a portrait of President Nixon; (2) replacing the words "Federal Reserve Note" with the words "Inflationary Note"; (3) replacing the numeral "50" with the numeral "30"; (4) replacing the word "Fifty" with the word "Thirty"; (5) replacing the statement, "This note is legal tender for all debts, public and private" with the statement, "This note is legal tender for all debts, public and private incurred by Presidential Housing"; (6) re-

---

1. The enlargement, with the modifications noted in the text, will be referred to as the "facsimile" hereinafter.

placing the "Series" date with the date "1973"; and (7) replacing the letter in the Federal Reserve seal with a teapot.

Plaintiff, who had created and successfully marketed similar items,[2] intended to display and to sell reproductions of this facsimile in art galleries and at art shows across the country.

On July 30, 1973, plaintiff, accompanied by counsel, went to the Kansas City field office of the United States Secret Service with a copy of the facsimile for the purpose of obtaining an opinion of the legality of the reproduction. After inspecting the facsimile, Secret Service Agents seized it as contraband pursuant to 18 U.S.C. § 492 (1970),[3] as being in violation of 18 U.S.C. § 474 (1970),[4] and advised plaintiff that possession of the facsimile was a violation of federal counterfeiting laws for which he could be arrested. Plaintiff was advised that he would not be arrested at that time, apparently for the reason that it was assumed from the nature of the facsimile that plaintiff did not intend to counterfeit obligations of the United States. The Secret Service agents then escorted plaintiff and his attorney to the office of J. Whitfield Moody, First Assistant United States Attorney for this District. Mr. Moody again advised plaintiff that possession of the print was a violation of federal law for which he could be arrested. Mr. Moody agreed that plaintiff should not be arrested at that time, but warned that if plaintiff made or possessed other copies of the seized facsimile, he would be arrested for violations of the federal counterfeiting laws.

On August 9, 1973, plaintiff filed a complaint in this Court seeking return of the seized print and a declaratory judgment that the facsimile was not in violation of federal law. On August 23, 1973, plaintiff moved for a preliminary injunction to enjoin defendants from interfering with plaintiff's possession, use and reproduction of the facsimile. That motion was heard by the Court on August 31, 1973, and by Order entered September 5, 1973, the preliminary injunction was denied. Subsequent to that hearing, plaintiff abandoned his prayer for the return of the facsimile and now seeks only the declaratory judgment.

### II.

Before reaching the merits of the complaint, the Court must address questions of jurisdiction and justiciability raised by defendants. First, defendants claim that plaintiff has failed to establish the $10,000 jurisdictional amount required by 28 U.S.C. § 1331 (1970). This contention is without merit. Plaintiff produced substantial competent evidence at trial that reproductions of the facsimile would sell for approximately $150 each without frames, and for more with frames. Further, plaintiff showed that a similar design, a series of "Watergate" stamps featuring the major figures in the Nixon administration, had

---

**2.** Plaintiff's exhibit 4, a "Watergate stamp" featuring portraits of Messrs. Nixon, Mitchell, Erlichman and Haldeman, apparently sold very well at art galleries in Washington, D.C. Sets of the entire series of "Watergate stamps" produced by plaintiff have been exhibited in the Library of Congress and in the Smithsonian Institution.

**3.** 18 U.S.C. § 492 (1970), provides in pertinent part:

All counterfeits of any coins or obligations or other securities of the United States or of any foreign government, or any articles, devices, and other things made, possessed, or used in violation of this chapter or of sections 331–333, 335, 336, 642 or 1720, of this title, or any material or apparatus used or fitted or intended to be used, in the making of such counterfeits, articles, devices or things, found in the posses-

sion of any person without authority from the Secretary of the Treasury or other proper officer, shall be forfeited to the United States.

**4.** 18 U.S.C. § 474 (1970), provides in paragraph 6:

Whoever prints, photographs, or in any other manner makes or executes any engraving, photograph, print, or impression in the likeness of any such obligation or other security, or any part thereof, or sells any such engraving, photograph, print, or impression, except to the United States, or brings into the United States, any such engraving, photograph, print, or impression, except by direction of some proper officer of the United States;

.    .    .    .    .

[s]hall be fined not more than $5,000 or imprisoned not more than fifteen years, or both.

sold very well. The Court finds and concludes that it does not appear to a legal certainty that the amount in controversy herein is less than $10,000, and therefore there is subject matter jurisdiction. *See St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 288, 58 S.Ct. 586, 590, 82 L.Ed. 845, 848 (1938).

▅ Defendants also contend that plaintiff has presented no justiciable case or controversy because he has not shown that any criminal prosecution for violation of the substantive provisions of 18 U.S.C. § 474 (1970), is planned or threatened, and that in the event of such criminal proceedings, plaintiff's constitutional rights would be protected by the defense of that prosecution. This contention is also without merit. "The assumption that defense of a criminal prosecution will generally assure ample vindication of constitutional rights is unfounded [where statutes have overbroad sweep]." *Dombrowski v. Pfister*, 380 U.S. 479, 486, 85 S.Ct. 1116, 1120, 14 L.Ed. 2d 22, 28 (1965). *See NAACP v. Button*, 371 U.S. 415, 433, 23 S.Ct. 328, 338, 9 L.Ed.2d 405, 418 (1963). It also must be remembered that this is an action for declaratory judgment. While the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202 (1970), does not enlarge the jurisdiction of this Court, the purpose of the Act is to "afford a remedy to one who is uncertain of his rights and desires an early adjudication without having to wait until his adversary decides to bring suit." *Elkanich v. Alexander*, 315 F.Supp. 659, 661–662 (D.Kan.), *aff'd*, 430 F.2d 1178 (10th Cir. 1970). The test for justiciability in this context has been declared to be whether there is "a claim of specific present objective harm or a threat of specific future harm." *Laird v. Tatum*, 408 U.S. 1, 14, 92 S.Ct. 2318, 2326, 33 L.Ed.2d 154, 164 (1972). Plaintiff has satisfied this test. The seizure of the facsimile by the Secret Service and the threats of criminal prosecution have effectively prevented plaintiff from marketing and displaying reproductions of the facsimile. This is sufficient for the purpose of satisfying the case or controversy requirement of Article III of the Constitution.

## III.

Plaintiff's first prayer for relief is to have the Court declare that the facsimile seized is not within the scope of the Counterfeiting and Forgery Act, 18 U.S.C. §§ 471–509 (1970). Plaintiff's theory is based on the argument that the purpose of the statutory scheme is to prevent counterfeiting, and therefore, because plaintiff did not intend to engage in a proscribed activity, his preparation of and possession of the facsimile were entirely outside the scope of the Act. Further, plaintiff argues that the facsimile is not "in the likeness" of an obligation of the United States, and therefore is not within the contemplated scope of section 474 of the Act. Plaintiff also contends that section 504 of the Act indicates that the Congress did not intend an item such as this facsimile to be within the scope of section 474.

▅ Plaintiff's intent in causing the reproduction to be made is not a factor to be considered. *Webb v. United States*, 216 F.2d 151, 152–153 (6th Cir. 1954); *Wholesale Vendors, Inc. v. United States*, 361 F.Supp. 1045 (N.D.Tex.), *aff'd*, 486 F.2d 1402 (5th Cir. 1973). The only issue is whether this facsimile is a "likeness" within the purview of section 474. Plaintiff argues that the test for "likeness" is whether the item is such that it would deceive an honest, sensible and unsuspecting person of ordinary care that the item was genuine currency, citing in support *United States v. Smith*, 318 F.2d 94 (4th Cir. 1963); *United States v. Lustig*, 159 F.2d 798 (3d Cir. 1947), *rev'd on other grounds*, 338 U.S. 74, 69 S.Ct. 1372, 93 L.Ed. 1819 (1949); *United States v. Weber*, 210 F. 973 (9th Cir. 1913). This is the test for "similitude" as it pertains to unlawful *possession* as proscribed by paragraph 5 of section 474. The Government's primary concern here is with the unlawful *printing* of anything "in the likeness" of an obligation of the United States as proscribed by paragraph 6 of section 474. The "likeness" test for printing is not as stringent as the "similitude" test for possession. *Koran v. United States*, 408 F.2d 1321, 1325

n. 12 (9th Cir. 1969), *cert. denied*, 402 U.S. 948, 91 S.Ct. 1603, 29 L.Ed.2d 118 (1971); *Webb v. United States, supra* at 152–53; *Wholesale Vendors, Inc. v. United States, supra* at 1047–48.

■ This facsimile was produced by photographing a bona fide Federal Reserve note. There can be no question that the enlargement of that photograph, which is the basis of the facsimile, is a likeness within the meaning of the statute. *Wholesale Vendors, supra* at 1048. Even with the modifications, it is readily discernible that the facsimile is a photographic enlargement of an actual Federal Reserve note. The Court has no difficulty in finding and concluding that the facsimile, as modified, is a "likeness" within the meaning and purview of section 474.

■ Plaintiff's reliance on section 504[5] as an indication that the facsimile is not within the intended scope of section 474 is misplaced. The legislative history of section 504 explicitly states that this section does not authorize the printing of facsimiles in the likeness of obligations or stamps of the United States, but only permits reproductions appearing in publications. S.Rep. No. 2446, 85th Cong., 2d Sess. ——; 3 U.S. Code Cong. & Admin.News pp. 5268, 5272 (1958). This Court agrees with the conclusion in *Wholesale Vendors* that section 504 sets forth the only permissible exceptions to the prohibitions of the Act. 361 F.Supp. at 1048.[6]

**5.** 18 U.S.C. § 504 (1970) provides in pertinent part:

Notwithstanding any other provision of this chapter, the following are permitted:

(1) the printing, publishing, or importation, or the making or importation of the necessary plates for such printing or publishing, or illustrations of—

. . . . .

(C) any other obligation or other security of the United States,

. . . . .

for philatelic, numismatic, educational, historical, or newsworthy purposes in articles, books, journals, newspapers, or albums . . . .. Illustrations permitted by the foregoing provisions of this section shall be made in accordance with the following conditions—

For the reasons indicated, the Court finds and concludes that the facsimile is within the contemplated scope of the Act.

IV.

As alternative grounds for relief, plaintiff seeks to have the Court declare that sections 474 and 492 of the Counterfeiting and Forgery Statute are so overbroad and vague as to be unconstitutional or that the statute is unconstitutional as applied to plaintiff in that it violates his right to freedom of speech and expression. It appears from plaintiff's post-trial brief that he is challenging section 474 on overbreadth grounds and section 492 in connection with section 474 on vagueness grounds. These arguments will be considered separately.

■ Plaintiff's overbreadth argument is predicated on the fact that the "speech" elements of his conduct fall within the sweep of the proscriptions of section 474. Where, as here, "speech" and "nonspeech" elements are combined in the same course of conduct, incidental limitations on First Amendment freedoms may be justified where there is a sufficiently important governmental interest in regulating the nonspeech elements of that course of conduct. *United States v. O'Brien*, 391 U.S. 367, 376, 88 S.Ct. 1673, 1678, 20 L.Ed.2d 672, 679 (1968). In such a case, government regulation of the conduct is sufficiently justified when:

(1) it is within the constitutional power of the Government;

. . . . .

(i) all illustrations shall be in black or white,

. . . . .

(ii) all illustrations . . . shall be of a size less than three-fourths or more than one and one-half, in linear dimension, of each party of any matter so illustrated which is covered by subparagraph (A), (B), (C), or (D) of this paragraph. . . .

. . . . .

**6.** Plaintiff does not contend that the facsimile falls within the specific provisions of section 504. Although the facsimile is in black and white and is of a size greater than 1½ times the linear dimensions of the obligation copied, and is arguably done for a newsworthy purpose, it is not intended to appear in an article, book, journal or other publication as required by the statute.

(2) it furthers an important or substantial governmental interest;

(3) the governmental interest is unrelated to the suppression of free expression; and

(4) the incidental restriction on alleged First Amendment freedoms is no greater than essential to the furtherance of that interest.

*United States v. O'Brien, supra* at 377, 88 S.Ct. at 1679, 20 L.Ed.2d at 680.

In the case at bar, there is no dispute that section 474 comports with the first three of these requirements. The question presented, then, is whether the alleged restriction on the exercise of First Amendment freedoms is greater than necessary to further the Government's interest in preventing counterfeiting.[7]

■ The Court recognizes that there is conceivably some legitimate conduct protected by the First Amendment which might fall within the outer boundaries of section 474. "Many criminal statutes might be extended to circumstances so extreme as to make their application unconstitutional." *Williams v. United States,* 341 U.S. 97, 101, 71 S.Ct. 576, 579, 95 L.Ed. 774, 778 (1951). But any uncertainty or "chilling effect" of such conduct is of little relevance here, where the plaintiff's conduct of having the Federal Reserve note photographed is squarely within the specific proscriptions of paragraph 6 of section 474. *See Broadrick v. Oklahoma,* 413 U.S. 601, 608, 93 S.Ct. 2908, 2913, 37 L.Ed.2d 830, 837 (1973) and cases cited.

■ It cannot be disputed that the Government has a very substantial interest in protecting its currency, stamps and obligations against counterfeiting activities.

In protecting this interest, section 474 is aimed only at the suppression of the non-communicative conduct within its scope. This section is an appropriately narrow means of protecting a substantial governmental interest, and does not unnecessarily interfere with First Amendment rights. The Court therefore finds and concludes that section 474 has satisfied the four-step analysis of *O'Brien* and accordingly is not constitutionally infirm for overbreadth on its face.

The contention that the statutory provisions at issue here were unconstitutionally applied to plaintiff is based upon an allegation that these provisions were employed by defendants in a manner that prevented him from exercising his right to disseminate his views by way of the facsimile. This contention appears to be based on two premises: First, that the facsimile was so unlike an obligation of the United States that it would be inconceivable that plaintiff was engaged in counterfeiting activities; and secondly, that the seizure of the facsimile therefore resulted because of the content of the "message" conveyed by the facsimile. In short, plaintiff alleges that the seizure was politically motivated.

The Court finds no merit in this contention. Plaintiff's first premise is not tenable in light of the determination above that the facsimile is "in the likeness" of an obligation of the United States. Seizure of the facsimile, as being in violation of section 474, was therefore proper under the provisions of section 492 in the absence of a showing of an impermissible motive on the part of the defendants.

■ The premise that the seizure was politically motivated is simply not supported by any competent evidence. Plaintiff sought to establish this point by introducing into evidence certain other items,

---

7. The test for facial overbreadth appears to have been made more stringent in *Broadrick v. Oklahoma,* 413 U.S. 601, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973), by requiring that the overbreadth must be both real and substantial when judged in relation to the legitimate sweep of the challenged statute. 413 U.S. at 615, 93 S.Ct. at 2917, 37 L.Ed.2d at 841. The impact of this decision on traditional concepts of overbreadth is yet to be determined. See Justice Brennan's dissent at 632–33, 93 S.Ct. at 2926, 37 L.Ed.2d at 851–52.

arguably in the likeness of United States obligations, which had been circulated in this area and in magazines of national circulation which were neither seized nor prosecuted by the Secret Service. Plaintiff reasons that because these items had not been proceeded against, while his facsimile had been, the seizure resulted solely because of the political satire appearing on the facsimile. This evidence is of little probative value as presented. The photographic print of the dollar bills in a clenched fist which appeared in the June 17, 1974, issue of *Time* magazine,[8] for example, would appear on its face to fall within the exceptions of section 504. Plaintiff did not make any attempt to establish whether these items had been considered by the Secret Service, and if so, the reasons why seizures or prosecutions did not follow. The Court concludes that plaintiff failed to establish any improper motive in the seizure of the facsimile in question, and that these sections of the statute were not unconstitutionally applied to the plaintiff.

Plaintiff's final argument is that the term "likeness" in section 474, as used to define the proscribed activities within that section, is so vague as to permit unconstitutional infringement upon First Amendment rights by arbitrary and discriminatory enforcement. Apparently, plaintiff is arguing that the forfeiture provisions of section 492, dependent in this case upon violations of section 474, is impermissibly amenable to subjective or discriminatory enforcement.

The Court is not persuaded by this argument. First, plaintiff has failed to establish that the statute was applied to him in an arbitrary or discriminatory manner, as is indicated above. Further, enforcement of criminal statutes of necessity requires those charged with the enforcement of those statutes to exercise some degree of discretion. *Grayned v. City of Rockford,* 408 U.S. 104, 114, 92 S.Ct. 2294, 2302, 33 L.Ed.2d 222, 230 (1972). Section 474 provides sufficiently explicit standards on its face to guide those persons charged

with applying the provisions of section 492. Accordingly, the Court finds and concludes that these sections are not impermissibly vague.

## V.

For the reasons herein stated, the relief requested is denied in all respects, and it is

ORDERED that the Clerk enter judgment in favor of the defendants and against the plaintiff in accordance with this memorandum of decision.

## MEMORANDUM AND ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO AMEND JUDGMENT

This matter pends on plaintiff's Motion to Amend the Judgment. The motion was filed on November 22, 1974 and plaintiff filed supplemental suggestions on March 31, 1975 after the transcript of proceedings had been prepared and filed. The defendant filed suggestions in opposition to the motion on June 6, 1975. For the reasons and to the extent set forth below, the motion will be granted in part and denied in part.

Briefly stated, plaintiff contends that the Memorandum of Decision filed herein on November 15, 1974 should be amended to conform to the evidence presented at trial and that the Court should reverse its decision and enter judgment in plaintiff's favor.

The Court has reviewed the transcript of the proceeding and finds that the record supports plaintiff's contentions with regard to certain findings of fact made by the Court. However, the Court disagrees with plaintiff's counsel's interpretation even of the plaintiff's evidence, which plaintiff's counsel seems to feel that this Court has to find is true. The evidence did disclose that the original photograph was that of a face of a Twenty Dollar bill. The oval picture of Jackson was blacked out in this photograph so that it printed white, but the rest of the bill was photographed in its entirety. The Government Agent Poole testified that he

8. This exhibit was attached to plaintiff's post-trial brief.

was called to a printing plant by the manager, who showed him the negative of this photograph, and that this negative was perhaps 8″ x 20″ and certainly not by any means as big as the print, obviously made from the negative, which was seized by the Government. The Court's mistake in reciting that this was a photograph of a Fifty Dollar bill was because the only exhibit in evidence was a photographic enlargement of a Fifty Dollar bill.

The Court will further modify its findings of fact to emphasize that there is no evidence that any negative or print was made of a Government bill in the exact size of the bill.

The Court does not agree with plaintiff that these changes in the findings of fact dictate a reversal of the Court's original decision. The Court found and concluded, at page 6 of the Memorandum of Decision, that the facsimile, even as modified in design and size, was a "likeness" within the meaning and purview of 18 U.S.C. § 474 (1970). Nothing in plaintiff's motion and suggestions or in the corrected facts persuade the Court to disturb its decision. Accordingly, it is

ORDERED that plaintiff's motion to amend be, and is, granted to the extent that the Memorandum of Decision filed November 15, 1975 is amended to reflect the findings of fact made above; and it is

ORDERED that plaintiff's motion to amend is denied in all other respects.