UNITED STATES of America,
Plaintiff,

v.

Ralph M. ANDERSON, Defendant.

No. H–73–CR–2.

United States District Court,
E. D. Arkansas, E. D.

June 4, 1973.

Robert Fussell and Fletcher Jackson, Asst. U. S. Attys., E. D. Ark., Little Rock, Ark., for plaintiff.

Floyd J. Lofton, Little Rock, Ark., for defendant.

## Memorandum Opinion

HENLEY, Chief Judge.

This criminal case presents the question of whether or not an interstate transportation of a number of counterfeit but incomplete purported corporate bonds constitutes a violation of the third paragraph of 18 U.S.C.A., section 2314, where the connection of the defendant with the bonds terminated prior to their completion by another and their use as instruments to defraud the Police & Pension Fund of the City of North Little Rock, Arkansas.

The pertinent subdivision of section 2314 makes it a crime and offense for any person with unlawful or fraudulent intent to transport in interstate or foreign commerce any falsely made, forged, altered, or counterfeited "securities" knowing the same to have been falsely made, forged, altered, or counterfeited.

The one count indictment returned by the Grand Jury against the defendant charges that on or about August 13, 1972, the defendant with the requisite knowledge and intent transported in interstate commerce from Memphis, Tennessee, to Brinkley, Arkansas, 60 counterfeit $5,000 bonds of Arkansas Louisiana Gas Co. (Arkla) knowing the same to have been counterfeited.

The defendant pleaded not guilty and was tried to. a jury. A motion for the entry of a judgment of acquittal was made at the conclusion of the Government's case and again at the conclusion of all of the evidence. On both occasions ruling on the motion was reserved. The jury found the defendant guilty, and the motion has now been renewed and submitted on the record in the case and full, albeit informal, memorandum briefs. Both sides are in agreement that the precise question presented is one of first impression.

The historical facts of the case are substantially undisputed.

The case arises out of dealings between the defendant, Ralph M. Anderson, and Billy Dean Starks. In August 1972 both of these men were securities salesmen, and Starks was an employee of Stephens, Inc., a large Little Rock, Arkansas, investment banking house which deals largely in corporate securities, including those of Arkla. Prior to the time with which the Court is concerned the defendant and Starks had had business dealings together.

In 1972 Starks had devised a scheme to defraud the Fund that has been mentioned of very large sums of money. It was part of his scheme that he would induce the Trustees of the Fund to exchange valuable securities in the Fund's portfolio for worthless or counterfeit securities.

Starks obtained a genuine Arkla $5,000 first mortgage bond due in 1989 and paying 8 percent interest, an unquestionably valuable security. Starks in-

duced Anderson to take this genuine bond to Memphis and to have about 100 copies of it printed off by a commercial printer in that City.

The genuine bond contained the facsimile signature of W. R. Stephens who at the time was President of Arkla. It also bore the manual attesting signatures of the Secretary of Arkla and of an authorized agent of Morgan Guaranty Trust Co. of New York, the trustee under the bond indenture. The bond was a registered bond and bore a serial number.

Anderson was instructed to have the printers reproduce the genuine bond except for the payee identification appearing thereon and the attesting signatures. The copies of the bonds were to have their own new consecutive serial numbers. Those instructions were carried out. Anderson took the genuine bond to the printer and had the copies made. On the date charged in the indictment Anderson transported the bonds from the printer to the City of Brinkley, Arkansas, where the bonds were turned over to Starks. Thereafter the bonds were brought to North Little Rock and 60 of them bound their way into the portfolio of the Fund.

In September 1972 the fraud of Starks was discovered, and he fled to Caracas, Venezuela. He was returned to this country and was charged in this Court with having transported in foreign commerce a number of genuine corporate bonds with knowledge that they had been obtained by fraud in violation of the first paragraph of section 2314. He pleaded guilty and received a sentence of imprisonment for ten years which he is now serving.

After the Starks fraud was discovered or in connection, with its discovery the 60 bonds that have been mentioned and which the defendant had transported from Memphis to Brinkley were found to be in the possession of the Fund's Trustees. At that time the words "North Little Rock Police & Pension Fund" had been typed on each of the bonds as payee identification. The bonds recited that they would not be binding obligations of Arkla unless signed by an authorized agent of Morgan Guaranty Trust Co., and each of the bonds bore a forged or fictitious signature of "A. Cox," the purported agent of the Trust Co. None of the bonds bore the signature or purported signature of the Secretary of Arkla.

As far as the evidence showed, defendant's connection with the bonds ceased as soon as he delivered them to Starks in Brinkley. Assuming, as defendant contends, that the bonds at the time of their delivery to Starks did not identify any payee and were bare of attesting signatures, it is clear that in their then state they could not have been used to defraud anyone. Something further would have to be done to them before they could be negotiated to the Trustees of the Fund or to anyone else.

At the trial of the case the defendant took two positions: First, that in his dealings with the bonds, he acted honestly and in good faith and without guilty knowledge or fraudulent intent. His theory in that connection was that Starks asked him to have copies of the genuine bond made for use as training materials for salesmen in the employ of Stephens, Inc. Second, that the bonds were not counterfeited, and that even if they were they were in such an incomplete condition that they did not constitute "securities" within the definition of that term appearing in 18 U.S.C.A., section 2311.

The jury was instructed that before it could find the defendant guilty it must find, first, that the bonds were in fact counterfeit securities, second, that the defendant transported the bonds in interstate commerce from Memphis to Brinkley, and, third, that at the time of the alleged transportation the defendant knew that the bonds were counterfeit, and that he acted with respect to the bonds with unlawful or fraudulent intent.

The claim of the defendant that he acted at all times honestly and in

good faith and without fraudulent intent can be disposed of briefly. While there was no direct substantial evidence that defendant knew exactly what Starks proposed to do with the bonds or who or what was to be defrauded, there was ample evidence to justify a finding that the defendant knew that Starks was obtaining the bonds for a fraudulent purpose and delivered the bonds to Starks to the end that they might be used as instruments of fraud.

The jury was told that while the Government was required to prove that the defendant acted with guilty knowledge and fraudulent intent, it was not necessary for the Government to prove that the defendant knew exactly or with any particular degree of precision just how the bonds would be used, or by whom, or that he knew the person or persons or entity to be defrauded, and that it was sufficient if the jury found from the evidence beyond a reasonable doubt that the defendant knew generally that the bonds were to be used to defraud someone, and that he transported the bonds for the purpose of enabling them to be used as instruments of fraud. No objection to that instruction was made, and the Court is satisfied that it was a correct statement of the law.

As indicated, the second contention of the defendant is two-fold: First, that the bonds were not "counterfeited" or "counterfeit," and, Second, that even if they were, they were not "securities" within the meaning of the relevant statutes.

In State Bank of Poplar Bluff v. Maryland Casualty Co., 8 Cir., 1961, 289 F.2d 544, 547–548, Circuit Judge (now Mr. Justice) Blackmun, speaking for the Court said:

"... the noun 'counterfeit' means 'that which is made in imitation of something with a view to deceive', and ... the verb 'counterfeit' means 'to imitate.' Webster's New International Dictionary (Second Edition, 1960). The legal definitions place like emphasis ... so far as counterfeiting is concerned, upon copying or imitating. Black's Law Dictionary (Fourth Edition, 1951); ... 14 Am.Jur., Counterfeiting, § 2; 20 C.J.S. Counterfeiting § 1 ..."

█ It is not contended here that Arkla authorized the printing of the bonds in question or that they are or ever were binding corporate obligations of Arkla. They were copied from a genuine bond, and, as previously pointed out, there was substantial evidence from which the jury might have found, and clearly did find, that Anderson knew that the bonds were being printed for a fraudulent purpose. This being true, the jury could properly find and did find that the bonds in question were counterfeit. The instruction given by the Court to the jury on this phase of the case will be set out in full in connection with the discussion of defendant's claim that the bonds were not "securities." The Court now proceeds to discuss that claim.

The term "securities" as used in section 2314 is comprehensively defined in section 2311, and the statutory definition includes such instruments as notes, stock certificates, corporate bonds, checks, drafts, traveler's checks, letters of credit, evidences of indebtedness, "or, in general, any instrument commonly known as a 'security.'"

█ In considering whether the bonds involved in this case fall within the statutory definition just mentioned the Court is well aware of the established and salutary rule that criminal statutes must be construed strictly. However, such a statute is not to be given an artificial, unrealistic, or unreasonably strict or grudging construction.

It is conceded by the Government that when the defendant delivered the bonds to Starks, the spaces on the bonds for the attesting signatures of the Secretary of Arkla and the agent of the Trust Co. were blank. The Government does not concede that at the time at which defendant parted company with the bonds the spaces on them for payee identifica-

tion were blank, and there was some evidence which, if believed by the jury, might indicate that the payee had been identified before the bonds were brought into Arkansas. However, in view of the Court's instructions on this phase of the case the Court must assume for present purposes that except for the printing on the bonds they were completely blank when the defendant delivered them to Starks. The jury was told in that connection:

" . . . if you find from the evidence beyond a reasonable doubt that these documents or bonds were printed in Memphis without the authority of Arkansas Louisiana Gas Co. or Morgan Guaranty Trust Co., and that they were printed for the purpose on the part of some person or persons to use them as instruments of fraud or deceit, and if you further find from the evidence beyond a reasonable doubt that the bonds had a sufficient appearance of genuineness on their faces so that they might be used to defraud a person of ordinary intelligence and prudence, then you may find that the bonds were counterfeit securities *even though . . . they were printed in blank as far as identification of the payee or owner was concerned and even though they did not bear the countersignatures called for by the bonds.*" (Emphasis added.)

Reported cases arising under section 2314 and involving interstate transportation of "genuine" documents containing forged or fictitious signatures or countersignatures or interstate transportation of sales slips executed in connection with fraudulent use of commercial credit cards are numerous. But, there is a dearth of section 2314 case law dealing with the interstate transportation of "counterfeit" securities whether complete or incomplete. Further, section 2314 prosecutions seem generally to have been based, at least as far as reported decisions are concerned, upon post-fraud, rather than pre-fraud, transportations of "forged" documents.

The Court does not necessarily have any quarrel with the numerous cases cited to it by counsel for the defendant, but does not consider them to be ruling or particularly instructive here.

The case that most closely resembles this one factually is United States v. Webb, 5 Cir., 1971, 443 F.2d 308. In that case Webb had come into possession of certain counterfeit corporate payroll checks drawn on a New York bank; those checks identified the purported employer, were complete as to amount, and identified payees and the drawee bank. They were rather poor facsimiles and did not show any purported signature of a drawer. Webb passed one of the checks in Marietta, Georgia, and it was sent through regular banking channels to New York where it was dishonored. Webb was indicted in federal court in Georgia on account of that transaction; he was convicted and appealed. His conviction was affirmed. One of Webb's contentions was that since the checks did not have any drawer signature, they were not checks within the meaning of the Uniform Commercial Code which was in effect in Georgia and for that reason were not "securities" within the meaning of sections 2311 and 2314. In rejecting that contention the Court of Appeals pointed out that the document passed by Webb had most of the attributes of a check and was in fact used as a check to defraud the filling station operator who had accepted it.

■ In this case, the Government relies rather heavily on *Webb*, and that decision does establish that in order for a document to be a security within the meaning of the federal statutes with which the Court is concerned it need not be complete in every respect. It must be said, however, that the counterfeit check involved in *Webb* was much more nearly complete than the Court has assumed the bonds here in question to have been, and the check in *Webb* was actually used to perpetrate a fraud, and the prosecution was based on an interstate movement of the check after it had

been used as an instrument of fraud which is not the case here.

The defendant's position, as the Court understands it, is that in order for the interstate transportation of a forged, altered, or counterfeited document with intent to defraud to be a federal crime the document transported must at the time of the transportation have some "value," and that it does not have any value, other than that of the paper on which it is written, until it is so far completed that it can be used immediately as an instrument of fraud. The defendant argues that when he carried these bonds to Brinkley, they had no value as securities and were simply blank business forms not included within the statutory definition of "securities."

However valid that argument might be in a case involving an interstate transportation with fraudulent intent of a genuine but incomplete commercial or corporate business form, the Court is not willing to accept it in the case of truly counterfeit documents. Such acceptance, the Court thinks, would unduly restrict the scope of section 2314 and would give swindlers an unreasonable opportunity to escape federal prosecution as a result of interstate transportation of counterfeit documents.

■ Notice may be taken of the fact that corporate securities, including bonds and stock certificates, are generally printed or engraved originally in blank. That is to say, the documents originally have certain spaces on them that must be filled in before the documents are complete. Owners or payees must be identified, and validating signatures may be required. The Court is of the view that when one thinks of a "counterfeit" bond or stock certificate, one is thinking of the printing or engraved part of the document and not of

payee or owner identification or validating signatures.

■ In this case when the defendant transported the bonds to Brinkley, the "counterfeiting" of the documents was complete. Those documents were adequate similitudes of genuine Arkla bonds and after completion would certainly have been calculated to deceive a reasonably prudent and intelligent investor. Cf. United States v. Webb, supra; Koran v. United States, 5 Cir., 1969, 408 F.2d 1321; United States v. Lustig, 3 Cir., 1947, 159 F.2d 798; (resemblance sufficient); and United States v. Johnson, 9 Cir., 1970, 434 F.2d 827; United States v. Smith, 4 Cir., 1963, 318 F.2d 94; United States v. Gellman, D.C. Minn.1942, 44 F.Supp. 360; (resemblance insufficient). And the Court thinks that section 2311 is sufficiently broad to include incompleted bond forms when the forms are counterfeited with intent to defraud, and when they are transported in interstate commerce with such intent.

It is obviously to the advantage of a local swindler who intends to use a counterfeit security to perpetrate a local fraud to have his counterfeiting done at a place distant from his base of operations. To hold in line with the argument of the defendant would mean that such a swindler could go into a distant State, have counterfeit forms prepared, and bring them back home without risk of federal prosecution under section 2314 by the simple device of waiting until he returned to his own State to fill out the blanks on the documents, provided, of course, that the scheme does not contemplate a post-fraud movement of the completed document in interstate or foreign commerce.[1] As indicated, the Court is unwilling to so hold.

■ The Court certainly does not overlook the fact, previously mentioned,

1. Starks' scheme to defraud the Pension Fund apparently did not contemplate that the Arkla bonds would move in interstate commerce after they came into the possession of the Fund. They would simply remain in the Fund's portfolio until the fraud was discovered, which discovery was, of course, sooner or later inevitable.

that the reported cases which it has considered have been based on post-fraud interstate transportations. But, section 2314 is not limited to such transportations; it covers any interstate transportation of a falsely made, forged, altered, or counterfeited securities with intent to defraud.

An order will be entered overruling defendant's renewed motion for a judgment of acquittal and also overruling another motion to "strike the indictment" for failure to state a public offense.