The **RICHLAND TRUST COMPANY**,
Plaintiff-Appellant,

v.

**FEDERAL INSURANCE COMPANY**,
Defendant-Appellee.

No. 73–2100.

United States Court of Appeals,
Sixth Circuit.

Argued Feb. 6, 1974.

Decided March 19, 1974.

See also 6 Cir., 480 F.2d 1212.

Rees Davis, Mansfield, Ohio (Robert L. Ross, Ross, Davis & Baran, Mansfield, Ohio on the brief), for appellant.

John L. Miller, Columbus, Ohio (J. Paul McNamara, John L. Miller, McNamara & McNamara, Columbus, Ohio on the brief), for appellee.

Before CELEBREZZE and McCREE, Circuit Judges, and McALLISTER, Senior Circuit Judge.

PER CURIAM.

This is an appeal from the grant of summary judgment in an action for breach of a bankers' blanket bond. For the reasons set forth in Whitney National Bank of New Orleans v. Transamerican Insurance Company, et al., 476 F.2d 632 (3d Cir. 1973) (en banc), and the memorandum opinion of the district court filed November 7, 1972, attached hereto as an appendix, we affirm.

APPENDIX

MEMORANDUM AND ORDER

(Filed November 7, 1972)

GREEN, District Judge:

There is before the Court a motion for summary judgment by defendant Federal Insurance Company against plaintiff The Richland Trust Company. The facts, briefly stated, are as follows. The defendant, a New York insurance bonding corporation doing business in Ohio, issued a bankers' blanket bond (No. 9601987–A) to the plaintiff in 1965. During 1969, the said bond was renewed with an added endorsement, being Number Five, making the insurer liable up to $250,000 for losses suffered by The Richland Trust Company:

> By reason of having in good faith and in the course of business . . . purchased or otherwise acquired, accepted or received, or sold or delivered, or given any value, extended any credit or assumed any liability, on the faith of, or otherwise acted upon any securities, documents or other written instruments which prove to have been counterfeited or forged as to the signature of any maker, . . .

Between 1966 and 1969, plaintiff made loans to one Roland A. Getz and certain corporations controlled by Mr. Getz, relying on a number of financial statements submitted by Getz during that period. In January of 1970, plaintiff became aware of a government tax lien against Getz, effectively halting the business operations for which the loans had been made. In May of 1970, the Ohio State Bank Examiners ordered Getz's accounts, now totaling $288,500, transferred to the bank's reserve for bad debts.

Thereafter, on December 3, 1970, plaintiff notified defendant that it was seeking recovery of $250,000 under Endorsement Number Five, claiming that the financial statements submitted on Mr. Getz and his enterprises were counterfeited documents within the meaning of the endorsement. Defendant denied coverage, and also asserted that the losses were as a consequence of non-payment of debts, which are excluded from coverage by another policy provision.

Plaintiff then filed this action to recover its losses up to the $250,000 limit.

In its motion for summary judgment, defendant argues, inter alia, that plaintiff's loss was not incurred as a result of a forged signature or counterfeiting of "any securities, or other written instruments," and that recovery must be denied as there is no other provision under the bond allowing recovery.

Plaintiff argues that the better-reasoned cases hold that documents which are inaccurate statements of actual conditions are "counterfeit", as that word is used in the type of bankers' blanket bond involved in this case. As authority, plaintiff cites a dictionary definition and several federal and state cases. None of plaintiff's cited authorities are from this circuit or from this state.

Jurisdiction in this case is based upon diversity of citizenship, 28 U.S.C. § 1332. That being so, this Court is bound to apply and follow controlling state law, Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), which in this case would appear to be the law of Ohio.

In Union Banking Co. v. United States Fidelity and Guaranty Co., 4 Ohio App.2d 397, 213 N.E.2d 191 (1965), the question arose:

> Whether or not the various duplicate certificates of title upon which loans were made by the plaintiff were proved to have been "counterfeited or forged as to the signature of any maker." [*Id.*, at 404, 213 N.E.2d, at 198]

After discussing what it found to be the majority rule, the court said:

> There appears to be general agreement that the word *"counterfeit"*, as used *means an imitation of a genuine document having a resemblance intended to deceive and be taken for the original. Id.*, at 405, 213 N.E.2d, at 196 (emphasis as in original).

The court then held:

> We would again stress that a document or writing is counterfeit if it is an imitation, *i. e.* if an attempt has been made to simulate another document which is genuine.

> However, the certificates of title in this case arise not from imitation, but rather from a false representation of fact to the clerk of courts in the application filed therein. *Id.* at 405–406, 213 N.E.2d at 197.

That same rule of law has been announced by the Sixth Circuit Court of Appeals. In First National Bank of Memphis v. Aetna Casualty & Surety Co., 309 F.2d 702 (1962), cert. den. 372 U.S. 953, 83 S.Ct. 951, 9 L.Ed.2d 977 (1963), it was held:

> In our opinion, the warehouse receipts were not forged or counterfeited. They were signed and issued by the elevator company and endorsed by Butler-Foster, all by duly authorized officers. Falsity lies in the representation of facts contained in the warehouse certificates and not in the genuineness of their execution. In common parlance, the warehouse certificates would not be considered as forged or counterfeited and certainly not at common law or under the statutes of Alabama or Tennessee. *Id.*, at 705.

The law of New York, the other forum whose laws could possibly apply to this case, is in accord with the *Union Banking Co.* and *First National Bank of Memphis* decisions. In Exchange National Bank of Olean v. Insurance Company of North America, 341 F.2d 673 (CA2, 1965), it was held that a genuine document containing false representations could not be considered as counterfeit under the terms of a bond comparable to that in suit. *See also*, Maryland Casualty Co. v. State Bank & Trust Co., 425 F.2d 979 (CA5, 1970) and cases cited therein at p. 983.

Granting that in this case the financial statements submitted to plaintiff contained false representations of fact, they were genuine as to form and not imitations or simulations of genuine documents. It follows, therefore, that under the law controlling upon this Court such documents cannot be held as counterfeit within the terms of the bond. Summary judgment will be entered in defendant's favor dismissing plaintiff's complaint.

It is so ordered.

/s/ Ben C. Green
*United States District Judge*