UNITED STATES of America,
Plaintiff-Appellee,

v.

Donald ANDERSON and Jack Smith,
Defendants-Appellants.

Nos. 74–3291 and 74–3292.

United States Court of Appeals,
Ninth Circuit.

Jan. 23, 1976.

Rehearing and Rehearing En Banc
Denied March 30, 1976.

---

Steven M. Kipperman (argued), San Francisco, Cal., for defendants-appellants in 74–3291.

Stephen Arian (argued), San Francisco, Cal., for defendants-appellants in 74–3292.

Michael Starrett, Asst. U. S. Atty. (argued), San Francisco, Cal., for plaintiff-appellee.

## OPINION

Before DUNIWAY and SNEED, Circuit Judges, and PLUMMER,* District Judge.

PLUMMER, Senior District Judge:

Appellants were tried before a jury in the United States District Court for the Northern District of California and were convicted on both counts of a two count indictment. Count One charged a conspiracy from on or about the 22nd day of January, 1974, and continuously thereafter up to and including February 6, 1974, in the Northern District of California and elsewhere, to transport stolen stock of Flying Diamond Corporation (FDC) having a value of $405,000.00, in interstate commerce in violation of 18 U.S.C. § 371.

Count Two charged that the defendants did transport in interstate commerce from Salt Lake City, Utah, to San Francisco, California in the Northern District of California, stolen securities, that is, 90,000 shares of stock of FDC, of the value of approximately $405,000.00, knowing the same to have been stolen in violation of Title 18, United States Code, §§ 2314 and 2.

On appeal defendants have asserted twenty-one errors. We have considered all of them and found them to be without merit. We discuss those questions relating to the statute involved, the sufficiency of the indictment, the sufficiency of the evidence, variance, amendment of the indictment, objections to instructions, conduct of trial, post-arrest statement, Jencks Act, impeachment of witnesses, law of conspiracy, and motion for new trial.

*The Statutes.*

Paragraph 1 of Section 2314 of Title 18, United States Code, insofar as pertinent to this case provides:

"Whoever transports in interstate commerce . . . any . . . securities . . . of the value of $5,000 or more, knowing the same to have been stolen . . . ."

shall be guilty of an offense against the United States.

The purpose of Paragraph 1 of Section 2314 is precisely stated therein. No cases have been cited by defendants holding or suggesting that this portion of the statute is "unconstitutionally vague."

The definition of "securities" as used in Chapter 113 of Title 18, United States Code, Section 2311 of said Title provides:

" 'Securities' include any . . . stock certificate . . .; or any forged, counterfeited, or spurious representation of any of the foregoing; "

Sections 2311 and 2314 of Title 18, United States Code, refer only to tangible items which are capable of being touched and are able to be perceived as materially existing, especially by the senses of sight or touch. Since "stock" is an intangible interest in the capital of a corporation, it is an interest incapable of being seen, touched, or transported in interstate commerce, and is an interest which does not materially exist and is not visible or corporeal. For this reason the word "stock" is not mentioned in either Section 2311 or 2314 of Title 18, United States Code.

Count Two of the indictment also charges defendants with a violation of Section 2 of Title 18, United States Code, which provides:

"(a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.

"(b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal."

---

* The Honorable Raymond E. Plummer, Senior United States District Judge, District of Alaska, sitting by designation.

*Sufficiency of the Indictment.*

 Defendants challenge the sufficiency of the indictment. By technical construction they assert a claim that the indictment returned by the Grand Jury fails to sufficiently inform them of the nature of the charges for which they were indicted. However, an indictment is not to be read in a technical manner, but is to be construed according to common sense with an appreciation of existing realities. *United States v. Pleasant,* 469 F.2d 1121 (8th Cir. 1972); *McKinney v. United States,* 172 F.2d 781 (9th Cir. 1949). It must be read to include facts which are necessarily implied by the allegations made therein. *United States v. Barbato,* 471 F.2d 981 (1st Cir. 1973); *United States v. Silverman,* 430 F.2d 106 (2nd Cir. 1970). Even if an essential averment in an indictment is faulty in form, if it may by fair construction be found within the text, it is sufficient. *Chargois v. United States,* 267 F.2d 410, 412 (9th Cir. 1959), citing *Craig v. United States,* 81 F.2d 816, 822 (9th Cir. 1936).

 The purpose of an indictment is to furnish the defendant with a sufficient description of the charge against him to enable him to prepare his defense, to enable him to plead double jeopardy against a second prosecution and to inform the court of the facts alleged so that it can determine the sufficiency of the charge. *Russell v. United States,* 369 U.S. 749, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962); *Williamson v. United States,* 310 F.2d 192 (9th Cir. 1962). Fairly read this indictment does so. We see no basis for finding either count infirm. Inasmuch as the sentences imposed on both counts as to both defendants were to run concurrently, we consider only the conviction as to Count Two. *United States v. Westover,* 511 F.2d 1154, 1155 (9th Cir. 1974). The conspiracy count is unquestionably adequate since it charges the offense substantially in the words of the statute. *United States v. Murray,* 492 F.2d 178, 192 (9th Cir. 1973).

 The defendants were charged in an indictment returned by the Grand Jury. Neither the Fifth Amendment nor any constitutional provision prescribes the kind of evidence upon which Grand Juries must act. In the absence of any evidence to the contrary, the presumption of regularity which attaches to Grand Jury proceedings still exists. *See United States v. Hamling,* 481 F.2d 307, 313 (9th Cir. 1973).

The Sixth Amendment requires that in all criminal prosecutions the accused shall enjoy the right to be informed of the nature and cause of the accusations. Rule 7, Fed. R.Crim.P., provides in substance that the indictment shall be a plain, concise, and definite written statement of the essential facts constituting the offense charged. It need not contain any other matter or information not necessary to such a statement. The indictment shall state for each count the official or customary citation of the statute which the defendant is alleged therein to have violated.

Count Two of the indictment charges in pertinent part:

"That . . . the defendants did transport in interstate commerce from Salt Lake City, Utah, to San Francisco, California, . . ., stolen securities . . ., of the value of approximately $405,000 knowing the same to have been stolen . . ."

The wording of the indictment closely follows the language set forth in the statute. This is sufficient. *See United States v. Hamling, supra,* p. 312. The decision of this court was affirmed in *Hamling v. United States,* 418 U.S. 87, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974). Cases upholding the validity of an indictment under 18 U.S.C. § 2314 where the allegations followed the language of the statute are *United States v. Farabee,* 411 F.2d 1210 (5th Cir. 1969) and *Downing v. United States,* 348 F.2d 594 (5th Cir. 1955).

In addition to framing the indictment in the language of the statute the government in this case included in Count Two the additional matter or information that the securities alleged in the indictment were 90,000 shares of stock of Flying Diamond Corporation (FDC). Additional matter or

information was provided to defendants in response to their bill of particulars in that the defendants were physically shown and were permitted to inspect and examine the evidence, the stock certificates, upon which the government based the indictment and its case.

Defendants have totally failed to support their assertions. To the contrary, the record establishes that the requirements of *Russell, supra,* and *Williamson, supra,* were fully met by the government.

*Sufficiency of the Evidence.*

The essential elements required to be proved beyond a reasonable doubt, by the government, in order to establish the offense charged in Count Two of the indictment are as follows:

1. Defendants transported securities in interstate commerce as alleged in Count Two.

2. The securities transported were of a value of $5,000 or more.

3. That defendants knew the securities had been stolen.

At the close of the government's case in chief, defendants moved for judgments of acquittal. Counsel were heard in oral argument, the motions were taken under advisement, and thereafter denied. At the close of all the evidence appellants renewed their motions and they were again considered and denied.

■ The test to be applied by the trial court in deciding a motion for judgment of acquittal in a criminal case and the test to be applied by the appellate court in reviewing that decision are, as a practical matter, identical. The evidence must be considered in the light most favorable to the verdict. *United States v. Nelson,* 419 F.2d 1237 (9th Cir. 1969). The court must be "satisfied that the jurors reasonably could decide that they would not hesitate to act in their own serious affairs upon factual assumptions as probable as the conclusion" that the defendant is guilty as charged. *United States v. Leal,* 509 F.2d 122, 125 (9th Cir. 1975); *United States v. Felix,* 474 F.2d 610, 612

(9th Cir. 1973); *United States v. Nelson, supra,* 419 F.2d at 1245.

1. Defendants transported securities in interstate commerce as alleged in Count Two of the indictment.

A written stipulation was read into the record establishing that at approximately noon on February 6, 1974, the defendants left Salt Lake City, Utah, together, via Western Airlines and arrived in San Francisco, California, at approximately 1:00 p. m. The evidence establishes beyond a reasonable doubt that defendants had with them on this trip 90,000 shares of FDC stock. Shares of stock being intangible interests are incapable of being transported in interstate commerce. However, these particular 90,000 shares of FDC stock were in fact represented and evidenced by tangible physical objects, i. e. stock certificates, which were capable of being transported in interstate commerce.

These tangible, physical stock certificates were in fact physically handed by Smith to Anderson, were placed in a briefcase, and were transported in interstate commerce by air from Salt Lake City, Utah, to San Francisco, California. In view of the defendants' previous dealings in securities, their experience in transferring FDC stock certificates as stock nominees, their negotiations and dealings with defendant George, and the fact that they were to receive a $10,000 fee for supplying the stock certificates, their assertion that they were unaware that they were transporting securities is ridiculously unbelievable.

Had defendants' counsel read Section 2311 of Title 18, United States Code, they would, as a matter of law, have known, or should have known, that the definition of "securities" included any stock certificate, or any counterfeited or spurious representation thereof.

■ As their primary defense, counsel for defendants by their repeated misleading assertions endeavored to convince the jury that the FDC stock certificates were nothing more than "pieces of paper."

In *Richland Trust Co. v. Federal Insurance Co.*, 494 F.2d 641, 642 (6th Cir. 1974), the court, quoting *Union Banking Co. v. United States Fidelity & Guaranty Co.*, 4 Ohio App.2d 397, 213 N.E.2d 191 (1965) quoted as follows therefrom:

" 'There appears to be general agreement that the word *"counterfeit"*, as used means an *imitation of a genuine document having a resemblance intended to deceive and be taken for the original.* (emphasis as in original).

" 'We would again stress that a document or writing is counterfeit if it is an imitation, *i. e.*, if an attempt has been made to simulate another document which is genuine.' "

In *State Bank of Poplar Bluff v. Maryland Casualty Co.*, 289 F.2d 544, 547–548 (8th Cir. 1961) Circuit Judge (now Mr. Justice) Blackmun, speaking for the court said:

" . . . the noun 'counterfeit' means 'that which is made in imitation of something with a view to deceive', and that the verb 'counterfeit' means 'to imitate'. Webster's New International Dictionary (Second Edition, 1960). The legal definitions place like emphasis . . . so far as counterfeiting is concerned, upon copying or imitating. Black's Law Dictionary (Fourth Edition, 1951); . . . 14 Am. Jur., Counterfeiting, § 2; 20 C.J.S. Counterfeiting § 1."

The word "spurious" is defined as meaning outwardly similar or corresponding to something, without having its genuine qualities.

In *United States v. Chodor*, 479 F.2d 661 (1st Cir. 1973) the court held that instruments which resembled ten dollar Federal Reserve notes in all other significant respects could properly be found to be of sufficient quality to be considered counterfeit despite the absence of two serial numbers and the Treasury Seal on their face. The court at p. 664 stated:

"Finally, appellant's assertion that the trial court erred in failing to rule as a matter of law that the notes in question were not counterfeit because they were lacking 'significant particular[s],' *United States v. Moran*, 470 F.2d 742 (1st Cir. 1972), to wit, two serial numbers and the Treasury Seal on their face, is also unavailing. The proper test for determining what constitutes a counterfeit obligation is, as stated in *United States v. Lustig*, 159 F.2d 798, 802 (3d Cir. 1947), rev'd on other grounds, 338 U.S. 74, 69 S.Ct. 1372, 93 L.Ed. 1819 (1949),

'whether the fraudulent obligation bears such a likeness or resemblance to any of the genuine obligations or securities issued under the authority of the United States as is calculated to deceive an honest, sensible and unsuspecting person of ordinary observation and care dealing with a person supposed to be upright and honest.'

Accord, *United States v. Johnson*, 434 F.2d 827, 829 (9th Cir. 1970); *United States v. Smith*, 318 F.2d 94, 95 (4th Cir. 1963). In light of the three minor deficiencies of the notes in question, the trial court was clearly correct in submitting to the jury the question of whether these notes were of sufficient quality to be considered counterfeit. Lastly, given our endorsement of this standard and the fact that the court charged the substance of the *Lustig* test, even assuming that appellant requested an instruction that if the notes lacked 'any significant quality' they could not be found to be counterfeit, we cannot agree that the omission of this statement from the charge constituted prejudicial error."

*See United States v. Anderson*, 359 F.Supp. 61 (D.C.Ark.1973) where the court "held that incomplete bond forms were 'securities,' within the meaning of statute relating to transportation of stolen securities, even though they did not contain, at time of the transportation, the validating signatures, since the bonds were adequate similitudes of genuine bonds, and where after completion they certainly would have been calculated to deceive a reasonably prudent and intelligent investor, and statute was sufficiently broad to include incompleted bonds forms where the forms were counterfeited with an intent to defraud or where

they were transported in interstate commerce with such an intent."

At page 65 in *Anderson* one of the court's instructions appears and reads as follows:
" . . . if you find from the evidence beyond a reasonable doubt that these documents or bonds were printed in Memphis without the authority of Arkansas, Louisiana Gas Co. or Morgan Guaranty Trust Co., and that they were printed for the purpose on the part of some person or persons to use them as instruments of fraud or deceit, and if you further find from the evidence beyond a reasonable doubt that the bonds had a sufficient appearance of genuineness on their faces so that they might be used to defraud a person of ordinary intelligence and prudence, then you may find that the bonds were counterfeit securities *even though . . . they were printed in blank as far as identification of the payee or owner was concerned and even though they did not bear the countersignatures called for by the bonds.*" (Emphasis as in opinion).

At page 66 the court stated:
"In this case when the defendant transported the bonds to Brinkley, the 'counterfeiting' of the documents was complete. Those documents were adequate similitudes of genuine Arkla bonds and after completion would certainly have been calculated to deceive a reasonably prudent and intelligent investor. *Cf. United States v. Webb, supra* [5 Cir., 1971, 443 F.2d 308]; *Koran v. United States*, 5 Cir., 1969, 408 F.2d 1321; *United States v. Lustig*, 3 Cir., 1947, 159 F.2d 798; (resemblance sufficient); and *United States v. Johnson*, 9 Cir., 1970, 434 F.2d 827; *United States v. Smith*, 4 Cir., 1963, 318 F.2d 94; *United States v. Gellman*, D.C.Minn.1942, 44 F.Supp. 360; (resemblance insufficient). And the Court thinks that section 2311 is sufficiently broad to include incompleted bond forms when the forms are counterfeited with intent to defraud, and when they are transported in interstate commerce with such intent."

*Compare United States v. Galardi*, 476 F.2d 1072 (9th Cir. 1973).

2. The securities transported were of a value of $5,000 or more.

Although the indictment alleged the value of the stocks to be a value of approximately $405,000, the statute requires only that the securities have a value of $5,000 or more. ¶ 1, 18 U.S.C. 2314; *United States v. Weinberg*, 478 F.2d 1351, 1354 (3d Cir. 1973). "Value" means the face, par, or market value, whichever is the greatest, and the aggregate value of all securities referred to in a single indictment constitutes the value thereof. 18 U.S.C. § 2311.

■ If defendants had, in fact, any concern over the allegation that the value of the stock was approximately $405,000 instead of the value of $5,000 or more, as required by the statute, they could have remedied this situation by a motion to strike the excess amount of $400,000 as surplusage. Rule 7(d), Fed.R.Crim.P. Defendants, for tactical, strategical, or other reasons, elected not to do so. Consequently the government, under the court's instructions, were required to prove a value of approximately $405,000. The government succeeded in proving this value beyond a reasonable doubt to the satisfaction of the jury by establishing the over-the-counter price published in the Wall Street Journal. It is unquestioned that in proving the fact of market value, accredited price-current lists and market reports including those published in trade journals or newspapers which are accepted as trustworthy, are admissible in evidence. *Virginia v. West Virginia*, 238 U.S. 202, 212, 35 S.Ct. 795, 59 L.Ed. 1272 (1914); VI Wigmore on Evidence, 3rd ed., 1970; *Cf.* Fed.Rules Evid., Rule 803(17) and Note to ¶ (17), Notes of Advisory Committee on Proposed Rules, p. 584.

■ The assertions made by defense counsel that the stock certificates were valueless pieces of paper border on the frivolous in view of the evidence which established that defendants were to receive a

"finders fee" of $10,000, double the statutory amount required by 18 U.S.C. § 2314, for providing the FDC stock certificates.

3. That defendants knew that securities had been stolen.

Applying the appropriate standards of review we find that appellee's counter statement of facts appearing on pages 2 through 8, inclusive, of appellee's opening brief filed on February 14, 1975, is adequately supported by the record as a whole. We further find after considering the evidence in its entirety that there was sufficient relevant evidence, both direct and circumstantial, from which, if considered most favorably to the government, the jury could rationally and properly find or infer beyond a reasonable doubt that at a time or times between December, 1972, and August, 1973, Jay Miller and Michael Halfhill of American Stock Transfer Company, the stock transfer agent for FDC, without authority, overissued 200,000 shares of FDC stock. These shares of stock were evidenced by genuine stock certificate forms of FDC, reflected the names of fictitious shareholders and stated the number of shares represented by the stock certificate. The stock certificates were complete except for a signature in the blank space provided for the stock transfer agent. The evidence established that the insertion of the name Jay Miller or any other signature placed in this blank by anyone would have enabled the stock certificate to be transferred. Jay Miller with the connivance of John Badger and through the use of stock nominees, including defendants Anderson and Smith, accomplished the sale or transfer of $500,000 worth of the unauthorized overissued FDC stock certificates through the brokerage office of Transamerican Securities in Salt Lake City. Sometimes prior to June, 1973, defendant Smith obtained possession of 90,000 shares of this FDC stock from Jay Miller. In approximately June of 1973 two demands were made of Smith to return the stock certificates to the stock transfer agent of FDC. Smith refused to do so, claiming on one occasion that "they were in a safe place," and on the second occasion that he had destroyed them. In approximately December of 1973 defendant Anderson was contacted by defendant George with reference to obtaining collateral that he might use to raise money which he desperately needed. Anderson knew, or at that time became aware, that Smith still had in his possession the stock certificates representing 90,000 shares of FDC stock. Anderson, after being contacted by George, contacted Smith. Smith just happened to have come into contact with a "Reed Larson" who just happened to have stock certificates representing 90,000 shares of FDC stock, which he supposedly made available to Smith on condition that the stock was returned within ninety days. For the services rendered by Anderson and Smith they were to be paid a "finders fee" of $10,000. No evidence was presented by defendants that "Reed Larson" was to receive any money for making the stock available. There is no evidence that at the time Smith received the stock from "Reed Larson" that any address, information, or arrangements were made whereby the stock could be returned at the end of the ninety day period. Nor was any evidence presented at the trial by defendants that they had made any effort or attempt to locate "Reed Larson" to have him available as a witness to corroborate their testimony or to exculpate them.

It is evident from the verdict that the jury did not believe, and were not required to believe, the inherently improbable and unbelievable self-serving stories of the vitally interested defendants. Their testimony could not only be disbelieved, but from the totality of the circumstances, including the manner in which they testified, a contrary inference or conclusion could properly be drawn. The jury was not gullible enough to swallow the incredible story fabricated by defendants, and properly found that the stock certificates which Smith had "stolen" by refusing to return them, upon demand, to the stock transfer agent of FDC, were in fact the stock certificates described in the indictment and which are the subject matter of this case. *See United States v. Cisneros*, 448 F.2d 298, 305, 306

(9th Cir. 1971); *United States v. Castro*, 476 F.2d 750 (9th Cir. 1973); *United States v. Ramos*, 476 F.2d 624 (9th Cir. 1973), *cert. denied* 414 U.S. 836, 94 S.Ct. 182, 38 L.Ed.2d 72; *United States v. Peyton*, 454 F.2d 213 (9th Cir. 1971); *Dyer v. MacDougall*, 201 F.2d 265, 268 (2nd Cir. 1952).

■ The court correctly instructed the jury that "stolen" means acquired or possessed, as a result of some wrongful or dishonest act or taking whereby a person wilfully obtains or retains possession of property which belongs to another, without or beyond any permission given, and with the intent to deprive the owner of the benefit of ownership. The stock certificates obtained by Smith and retained in his possession after the return thereof had been requested were "stolen" within the meaning of Section 2314 of Title 18, United States Code. The term "stolen" has no common law derivative and is usually construed broadly. *United States v. Turley*, 352 U.S. 407, 77 S.Ct. 397, 1 L.Ed.2d 430 (1957); *United States v. Hollinshead*, 495 F.2d 1154 (9th Cir. 1974); *Smith v. United States*, 233 F.2d 744 (9th Cir. 1956).

■ After carefully reviewing all the evidence produced at trial, considered in the light most favorable to the government, together with the reasonable inferences which may be drawn therefrom, we are convinced that there was an abundance of credible evidence, both direct and circumstantial from which the jury could find the defendants guilty as charged.

*Variance.*

■ A variance between the charge of the indictment and the proof offered at trial may affect the substantial rights of a defendant in a criminal case if the effect is to prevent the defendant from presenting his defense properly, or if it takes him unfairly by surprise, or if it exposes him to double jeopardy. Where, as in this case, the alleged variance does not have any of those effects it should not serve as a grounds for reversal.

Rule 52(a), Federal Rules of Criminal Procedure, provides in pertinent part:

"Any . . . variance which does not affect substantial rights shall be disregarded."

*See United States v. Andrino*, 501 F.2d 1373 (9th Cir. 1974); *Heisler v. United States*, 394 F.2d 692 (9th Cir. 1968); *United States v. Freeman*, 514 F.2d 1184 (10th Cir. 1975).

■ In this case there was no variance. Count Two of the indictment charged that defendants transported securities in interstate commerce from Salt Lake City, Utah, to San Francisco, California. The proof at trial established this fact beyond a reasonable doubt. The indictment charged the value of the securities transported were of a value of approximately $405,000. The proof at trial established beyond a reasonable doubt that the market value of the securities was approximately $405,000 and that the par or face value of the securities was $90,000. The statute requires only that the securities be of a value of $5,000 or more. The indictment charged that the defendants knew the securities had been stolen. The jury found this fact to be true beyond a reasonable doubt. The government at trial proved precisely each essential element of the charge alleged in the indictment.

There is no evidence that defendants were prevented from presenting a proper defense, if in fact they had one. Defendants cannot seriously assert that they were unfairly taken by surprise when in fact they were shown and permitted to inspect the government's evidence in advance of trial. The defendants have made no showing that they may now be exposed to double jeopardy.

Unfortunately for defendants, the integrity of the jury prevented defense counsel from misleading, deceiving or hoodwinking them into believing their ingenious assertions that the spurious or counterfeit securities stolen by defendants were mere pieces of paper. However, the government should not be faulted for the tactics or strategy of defense counsel.

The record as a whole reflects that no substantial rights of the defendants were

affected; that defendants were fairly notified of the substance of the offenses for which they were convicted; that the relationship between the offenses charged in the indictment and the offenses proved at trial clearly establish that defendants had adequate notice of the charges against them and that they are now fully protected against possible prosecution for the same offenses. In the final analysis, the effect of the trial court's rulings and instructions required the government to assume a greater burden of proof than the law required.

*Amendment of Indictment.*

■ When instructing the jury the trial court charged that an element of the offense is that the stock have a value in excess of $5,000. Since the indictment stated the value of the stock at approximately $405,000.00 the defendants contend that this amended the indictment. The amount in excess of $5,000 constituted mere surplusage and was properly rejected by the court. *Ford v. United States,* 273 U.S. 593, 602, 47 S.Ct. 531, 71 L.Ed. 793 (1927); *United States v. Dawson,* 516 F.2d 796, 799–804 (9th Cir. 1975); *United States v. Harvey,* 428 F.2d 782 (9th Cir. 1970); *United States v. Edwards,* 465 F.2d 943 (9th Cir. 1972); *Raymond v. United States,* 376 F.2d 581 (9th Cir. 1967). There was no amendment of the indictment.

*Objections to Instructions.*

■ The government's instruction 24, complained of now but not properly objected to at trial, essentially required the jury to find that the documents in question were "securities," a necessary element of the offense. When given the opportunity to object to this instruction the following objections were made:

"Object to Government's Instruction No. 24 on the grounds that it is an improper statement of the essential elements of the offense in this case."

"I object to 24 as an improper statement of the elements of the case."

Federal Rules of Criminal Procedure 30 provides in part:

"No party may assign as error any portion of the charge or omission therefrom unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection."

An objection that merely alleges that the instruction was not proper law or incorrectly stated the law is not sufficient. *United States v. Jansen,* 475 F.2d 312, 318 (7th Cir. 1973); *Friedman v. United States,* 381 F.2d 155, 160 (8th Cir. 1967); *Northcraft v. United States,* 271 F.2d 184, 189 (8th Cir. 1959); *See United States v. Machado,* 457 F.2d 1372, 1375 (9th Cir. 1972). The objections made here fall into this category and accordingly raise no issue for appeal. It would have been proper to leave to the jury the issue of whether these constituted counterfeit or spurious securities. *United States v. Johnson,* 434 F.2d 827, 829 (9th Cir. 1970); *United States v. Chodor,* 479 F.2d 661, 664 (1st Cir. 1973); *United States v. Anderson,* 359 F.Supp. 61, 65 (D.Ark. 1973).

It is significant that defendants made no requests for, nor expressed any objection to the court's failure to give, an instruction based on *Johnson, Chodor* or *Anderson,* defining the word "counterfeit." As they were undoubtedly aware, the giving of a proper instruction would have prompted closer scrutiny and comparison of the stock certificates and would have had a devastating effect on defendants' fatuous argument that the securities involved were only "pieces of paper."

■ The issue of "counterfeit" was in fact indirectly presented to the jury in the form of the value of the securities. The court instructed the jury that their value was determined by the price at which a willing buyer and a willing seller would exchange them. If the stock certificates had not been realistic enough to constitute a "counterfeit" then they would have had no value in the jury's mind, resulting in an acquittal. Therefore, the issue of whether the stock certificates constituted "securities" was submitted to the jury and decided by them adversely to the defendants. On

these facts, we find that no substantial right of the defendants was affected.

*Conduct at Trial.*

█ Included within this topic is the reception of evidence, cautionary instructions, and comments by the judge. This is an area where trial judges have broad discretion. *United States v. Campbell,* 466 F.2d 529, 531 (9th Cir. 1972); *United States v. Amaral,* 488 F.2d 1148, 1152 (9th Cir. 1973); *United States v. Wright,* 160 U.S. App.D.C. 57, 489 F.2d 1181, 1186 (1973). We find no abuse thereof. One matter deserves special mention. On handling these securities the defendants violated a civil injunction that was entered in another case because of the overissue of FDC stock. This information was properly admitted to rebut claims that defendants believed that they were participating in a legitimate stock transaction. Defendants objected on the ground that the government was trying to give the impression that the violation of the injunction somehow involved a criminal action. The judge stated that he supposed that the acts could be classed as contemptuous. Defense counsel agreed. We fail to see how the occurrence of this colloquy before the jury prejudiced defendants. The judge did not raise the issue, but merely disposed of it once raised by defense counsel. The jury was not told that the acts were in fact contemptuous. They were properly informed of the violation of the injunction, however, to negate their defense. We do not think that the judge's statement amounts to comment on the evidence, but if it does, it was not improper. *United States v. Murdock,* 290 U.S. 389, 54 S.Ct. 223, 78 L.Ed. 381 (1933); *United States v. Williams,* 473 F.2d 507 (5th Cir. 1973); *Schoepflin v. United States,* 391 F.2d 390, 397 (9th Cir. 1968). There was no error.

*Post-arrest Statements.*

█ After arrest both defendants made exculpatory statements. These were introduced at trial. Their admission was not improper. The contention that arraignment was delayed so that defendants could be questioned prior to the appointment of counsel is not supported by the record. There is no *Bruton* problem because both defendants testified. Anderson's hearsay objection to Smith's statement was waived because he opened the door by first using it and because he failed to object when the parts of it relating to him had been read verbatim for the jury's consideration. *McCormick on Evidence,* 2nd ed., 57; 1 *Wigmore on Evidence,* 3rd ed. § 18.

*Jencks Act.*

█ Outside of the presence of the jury one of the government's witnesses, Secret Service Agent Miskinis, revealed that he had made a Jencks Act statement. The government agreed to produce it, but rather than delay the trial, cross examination continued. No prejudice resulted from this procedure. After reading the statement the defendants had the right to call Miskinis. Defense counsel argues that the judge informed the jury of the existence of the statement and of the right to recall Miskinis to examine him on it. He argues that this was improper under such cases as *Beaudine v. United States,* 414 F.2d 397, 401 (5th Cir. 1969) and *Gregory v. United States,* 125 U.S.App.D.C. 140, 369 F.2d 185, 191 (1966), in that the subsequent failure to recall the witness after reading the statement implied to the jury that the statement confirmed the witness's testimony whereas the statement may properly be used for impeachment only. We agree that it is usually a good procedure not to inform the jury of Jencks Act statements. We do not think that any other procedure was followed here. After completing cross examination defense counsel requested that Miskinis remain available. The judge told him to be available and said "they will look over the records and you may be recalled." What "the records" were was never disclosed to the jury. It was the defendant that first raised the matter before the jury. The trial judge's tangential remark was not an abuse of discretion.

*Impeachment of Witnesses.*

██ A third defendant in this case, Phil Georgopoulos, entered a plea bargain and testified against Anderson and Smith. On direct examination the government elicited his prior criminal record and information concerning the plea bargain. Defendants contend that this improperly permitted the government to impeach its own witness. Such a rule would allow the defense to create a false impression, or the jurors to think that the government was trying to keep something from them. *United States v. Rothman*, 463 F.2d 488, 490 (2nd Cir. 1972). We reject this contention.

*Law of Conspiracy.*

██ Many of defendants' other objections relate to the law of conspiracy. Section 2314 does not require intent to use interstate commerce. *United States v. Powers*, 437 F.2d 1160, 1161 (9th Cir. 1971). Nor does such a conspiracy. *United States v. Greer*, 467 F.2d 1064, 1071 (7th Cir. 1972). Statements of a co-conspirator are not hearsay even if made prior to the entry of the conspiracy by the party against whom it is used. *United States v. Ramirez*, 482 F.2d 807, 816 (2nd Cir. 1973). There was no fatal variance as to the times of the existence of the conspiracy as the indictment charged in terms of "on or about" and defendants were in no way prejudiced. *United States v. Donner*, 497 F.2d 184, 192 (7th Cir. 1974). There was no evidence justifying the giving of the requested instruction on multiple conspiracies, and so it was properly refused. *United States v. Noah*, 475 F.2d 688, 697 (9th Cir. 1973); *United States v. American Radiator & Stand. San. Corp.*, 433 F.2d 174, 199 (3rd Cir. 1970). The court charged that commission of overt acts may constitute the best proof of conspiracy. Other parts of the instructions made clear that the jury must find the existence of an agreement. We feel that the instruction merely informed the jury that proof of the crime usually turns on circumstantial evidence. *Blumenthal v. United States*, 158 F.2d 883, 889 (9th Cir. 1946), aff'd 332 U.S. 856, 68 S.Ct. 385, 92 L.Ed. 425 (1947); *United States v. Jacobo-Gil*, 474 F.2d 1213, 1215 (9th Cir. 1973). The court's instructions on conspiracy were proper.

*Motion for New Trial.*

██ Finally, defendants argue that they are entitled to a new trial because the government inadvertently failed to disclose one of Georgopoulos' three prior felony convictions at trial. That conviction was thirteen years earlier. Besides the two other convictions Georgopoulos pleaded guilty in this case, so his credibility was already sufficiently in question. Any error was harmless. The court's refusal to grant a new trial based on newly discovered impeaching evidence was within its discretion. *United States v. Cozzetti*, 469 F.2d 684 (9th Cir. 1972).

Defendants' other asserted errors do not merit discussion.

After carefully reviewing all the evidence we are convinced that defendants received a fair and impartial trial. From the evidence, considered in the light most favorable to the government, together with the reasonable inferences which could be drawn therefrom, we find that there was an abundance of credible evidence, both direct and circumstantial, from which the jury could find the defendants guilty as charged. *Glasser v. United States*, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942); *United States v. Westover*, 511 F.2d 1154 (9th Cir. 1975); *United States v. Celestine*, 510 F.2d 457 (9th Cir. 1975); *United States v. Lincoln*, 494 F.2d 833 (9th Cir. 1974); *United States v. Hood*, 493 F.2d 677 (9th Cir. 1974); *United States v. Ogden*, 484 F.2d 1274 (9th Cir. 1973), cert. denied 416 U.S. 987, 94 S.Ct. 2391, 40 L.Ed.2d 764 (1974); *United States v. Munns*, 457 F.2d 271 (9th Cir. 1972), cert. denied 409 U.S. 871, 93 S.Ct. 199, 34 L.Ed.2d 121.

The judgments of conviction are affirmed.

DUNIWAY, Circuit Judge (dissenting):

I dissent. I would reverse on the ground that the grand jury charged one offense but the government failed to prove it. Instead,

the government proved another offense, which the grand jury did not charge.

Section 2314 of Title 18, U.S.Code, defines a number of offenses. Even the first paragraph of the section, which is the one on which the indictment is based, defines more than one offense. It reads:

> Whoever transports in interstate or foreign commerce any goods, wares, merchandise, securities or money, of the value of $5,000 or more, knowing the same to have been stolen, converted or taken by fraud; . . .

Depending on how it is construed, the foregoing language can be said to define at least five offenses: knowing transportation of stolen "goods" or "wares" or "merchandise" or "securities" or "money." The number can be doubled by treating transportation in "interstate" or "foreign" commerce as separate. They appear in the statute in the disjunctive. Further multiplication by at least three lurks in the differences between "stolen," "converted," or "taken by fraud." Nor is this all. "Securities" is defined in the fifth paragraph of § 2311.[1] Again, depending on how the language of § 2311 is construed, the number of possible separate offenses is at least 30, and if we add "forged," "counterfeited," or "spurious" as separate, the number approaches 100. All of these can again be increased by tacking on one or more of the alternatives in the first paragraph of § 2314. And the foregoing leaves out for consideration the three definitions of "value" in § 2311: "face, par, or market value, whichever is the greatest."

I mention the number of possible offenses only to emphasize that this is not a case in which the offense can be charged in the language of the statute. More specificity is required because the defendant has a right, under the Fifth Amendment, to be charged only by a grand jury, and the grand jury has a duty under the Sixth Amendment to inform the defendant of the nature and cause of the accusation, *Cf. Russell v. United States*, 1962, 369 U.S. 749, 761, 763–64, 765, 82 S.Ct. 1038, 8 L.Ed.2d 240. Nor can deficiencies in the indictment be cured by a bill of particulars. *Id.* at 769–70, 82 S.Ct. 1038.

In this case the two counts of the indictment charge a conspiracy in Count I:

> To willfully and knowingly transport in interstate commerce from Salt Lake City, Utah, to San Francisco, California, 90,000 shares of stolen Flying Diamond Corporation stock with a value of approximately $405,000.00, the defendant then knowing the stock to be stolen, in violation of Title 18, United States Code, Section 2314,

and in Count II that the defendants:

> did transport in interstate commerce from Salt Lake City, Utah, to San Francisco, California, in the Northern District of California, stolen securities, that is, 90,000 shares of stock of Flying Diamond Corporation, of the value of approximately $405,000.00, knowing the same to have been stolen; in violation of Title 18, United States Code, Sections 2314 and 2.

I find it remarkable that neither § 2314, which mentions "securities," nor § 2311, which says that "securities" includes about 30 different things, plus "forged, counterfeited or spurious representations" of any of them, mentions "stock." I cannot help wondering whether the person who drew up the indictment had read the law. The nearest thing to "stock" that the law does mention is, in § 2311, "stock certificate." Yet it

---

1. "Securities" includes any note, stock certificate, bond, debenture, check, draft, warrant, traveler's check, letter of credit, warehouse receipt, negotiable bill of lading, evidence of indebtedness, certificate of interest or participation in any profit-sharing agreement, collateral-trust certificate, preorganization certificate or subscription, transferable share, investment contract, voting-trust certificate, certificate of interest in property, tangible or intangible; instrument or document or writing evidencing ownership of goods, wares, and merchandise, or transferring or assigning any right, title, or interest in or to goods, wares, and merchandise; or, in general, any instrument commonly known as a "security", or any certificate of interest or participation in, temporary or interim certificate for, receipt for, warrant, or right to subscribe to or purchase any of the foregoing, or any forged, counterfeited, or spurious representation of any of the foregoing;

surely is hornbook law that "stock," which is an intangible interest in the capital of a corporation, is not the same as "stock certificate," which is a piece of paper that, when genuine, represents, but is different from "stock."

The proof does not show that the defendants transported stock, or that they conspired to transport stock. What they did conspire to transport, and did transport, was stock certificates. Moreover, the stock that the certificates purported to represent had neither been authorized nor issued, and the certificates lacked the signature of an authorized officer of the transfer agent that would have made them *prima facie* valid and so negotiable. The evidence is that 90,000 shares of the stock would have been worth $405,000 in the over-the-counter market. But the evidence also is that the certificates in question, because they were spurious, had no value at all; they were not stock; they did not evidence stock. If ever there were a case in which the grand jury's charge was not proved, this is that case. *See: Danielson v. United States*, 9 Cir., 1963, 321 F.2d 441 (charge: counterfeiting United States bonds; proof: forging endorsement on genuine United States bonds. Conviction reversed); *Jeffers v. United States*, 9 Cir., 1968, 392 F.2d 749 (charge: fraud, representation that money received would be used to promote religion; proof: representation that moneys would be used for office supplies and expenses. Conviction reversed).

What the proof shows is that the defendants conspired to transport and transported "falsely made, forged, altered or counterfeited securities" (stock certificates) in violation of the third paragraph of § 2314, or stolen securities (stock certificates) that were "forged, counterfeited or spurious representations," having a "value" ("par value," § 2311) of $90,000, not $405,000.00, in violation of the first paragraph of § 2314. This, however, is not what was charged. The court permitted proof of market value of genuine stock, which was not shown to have been involved, and it permitted the jury to find that there were 90,000 shares of stock that were stolen, when the proof showed no such thing. This is not the kind of harmless error to which Rule 52(a), F.R. Crim.P. refers. Here, the error affects substantial rights.

I would reverse both convictions in their entirety.